UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
ROSALIE ROMANO; PATRICIA GLUECKERT,
individually and on behalf of the Estate of WILLIAM G.
GLUECKERT; WILLIAM P. GLUECKERT;
FRANCISCO PASTOLERO and MARIA SPICER; JAYNE
MANN; DENISE FLORIO; ROSS MEADOW and
ARLENE MEADOW; JACOB KHOLODNY and BELLA
KHOLODNY; FLO RAUCCI, individually and on behalf of
the Estate of SALVATORE RAUCCI; DANIEL
GALLANTE and JENNIFER GALLANTE; and TERESA
MEADE, individually and on behalf of all others similarly
situated; and MARYANN HERBERT; CHRISTINA
ANDREWS-SALES; CHRISTOPHER CAGNA; JACKIE
LIEBERMAN; CATHERINE LEWONKA; EUGENE
CONNOLLY; VIVIIANE BLICKENSDERFER; DANA
BLICKENSDERFER; GLENN FALINO and MARCIA
FALINO; and MICHAEL FALINO, individually,

                                       Plaintiffs,

        -against -

NORTHROP GRUMMAN CORPORATION; NORTHROP
GRUMMAN SYSTEMS CORPORATION; and TOWN OF
OYSTER BAY

                                   Defendants.
-----------------------------------------------------------------------X

Case No: 16-cv-5760

(Hurley, J.)

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO NORTHROP
GRUMMAN CORPORATION'S AND NORTHROP GRUMMAN SYSTEMS'
<u>MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

**NAPOLI SHKOLNIK PLLC**
Attorneys for Plaintiffs and the Proposed Class
360 Lexington Ave., 11th Floor
New York, NY, 10017
Tel: (212) 397-1000
lfactor@napolilaw.com

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... i

PRELIMINARY STATEMENT ..........................................................................1

STATEMENT OF FACTS ...................................................................................1

ARGUMENT

POINT I. STANDARD OF REVIEW ................................................................. 3

    A.   General Rules.......................................................................................3

    B.   Defendants' Exhibits Should Not Be Considered....................................5

POINT II. THE LAW OF THE CASE IS THAT PLAINTIFFS' CLAIMS ARE TIMELY........ 6

POINT III. ALL FACTUAL ISSUES MUST BE RESOLVED BY THE TRIER OF FACT........9

    A.   Defendants Raise Questions of Fact Inappropriate on Motion to Dismiss............... 9

    B.   The Applicable Accrual Dates for Plaintiffs' Claims.............................................10

    C.   The "Reasonably Should Have Known" Test Requires Specific Objective
           Knowledge…………………………..…………..…………………………….…..12

POINT IV. PLAINTIFFS' TESTING RESULTS SUPPORT THEIR CLAIMS AND ARE
ONLY ONE COMPONENT OF A FACTUAL INQUIRY ………………………………17

    A.   Environmental Test Results (Defendants' Exhibit 8) Present Fact Issues...............17

    B.   The Test Results Show Numerous Exceedances of Applicable Standards………....17

    C.   The List of Pollutants is Not Limited to Those Shown in Exhibit 8……..……....18

    D.   The Two-Injury Rule…………………………………………..……...…19

POINT V. NON-RESIDENT PLAINTIFFS' CLAIMS ARE TIMELY………………….…...20

    A.   Class-Action Tolls the Claims of All Plaintiffs………………………...............20

    B.   The Relation Back Rule Applies…..……………………………………....21

POINT VI. RESPONDING TO TOWN OF OYSTER BAY'S MEMORANDUM IN
SUPPORT………………………………………………………………………….23

CONCLUSION ...................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abraham v. Town of Huntington,*
2018 U.S. Dist. LEXIS 84979, WL 2304779 (E.D.N.Y. 2018) …….…………..……..…….…5

*Ali v. Mukasey,*
529 F.3d 478 (2d Cir. 2008).…………………………………………….…….............8

*Allaire Corp. v. Okumus,*
433 F.3d 248 (2d Cir. 2006)……...………….…..……………………….……………......3

*American Pipe & Construction Co. v. Utah,*
414 U.S. 538 (1974)………………………………………………………….…..…..21

*Andujar v. Rogowski,*
113 F.R.D. 151 (S.D.N.Y. 1986)……………….………………………….…………..21

*Annunziato v. City of New York,*
224 A.D.2d 31 (2d Dept. 1996)…….……………………………………………..…..11

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) …………………………………...............................................4

*Chiari v. New York Racing Ass'n,*
972 F. Supp. 2d 346 (E.D.N.Y. 2013)……...……………………………………………..8

*Christianson v. Colt Indus. Operating Corp.,*
486 U.S. 800 (1988)…………………………………………..………………………7

*Collins v. Olin Corp.,*
2009 U.S. Dist. LEXIS 5444, 2009 WL 279027 (D. Conn. 2009)…….….…...…………….15

*Conforti v. County of Nassau,*
41 Misc. 3d 1236(A) (Sup. Ct. Nassau Cty., 2013)……………………..……….……..20

*Cullen v. Margiotta,*
811 F.2d 698 (2d Cir. 1987)……………………………………………………..…..21

*DiFolco v. MSNBC Cable L.L.C.,*
622 F.3d 104 (2d Cir. 2010)……………………………….…………………………4

*Envtl. Servs. v. Recycle Green Servs.,*
7 F. Supp. 3d 260 (E.D.N.Y. 2014)…..……………………………………………….5

# TABLE OF AUTHORITIES
## (continued)

*Freier v. Westinghouse Elec. Corp.,*
  303 F.3d 176 (2d Cir. 2002)…………………………………………………………….. *passim*

*Giovanniello v. ALM Media, LLC,*
  726 F.3d 106 (2d. Cir. 2013)………………………………………………………………..21

*Giugliano v. FS2 Capital Partners, LLC,*
  2015 U.S. Dist. LEXIS 118679 WL 5124796 (E.D.N.Y. 2015)………………………………5

*Golod v. La Roche,*
  964 F.Supp. 841 (S.D.N.Y. 1997)………………………………………………...………..19

*Hatteras Enters. v. Forsythe Cosmetic Grp., Ltd.,*
  2016 U.S. Dist. LEXIS 100352 WL 4083386 (E.D.N.Y. 2016)……………………………...7

*Hicksville Water Dist. v. Philips Elecs. N. Am. Corp.,*
  2018 U.S. Dist. LEXIS 53342 WL 1542670 (E.D.N.Y. 2018)……………….................4-5, 9

*In re PCH Assocs.,*
  949 F.2d 585 (2d Cir. 1991)……………………………………………………………….7

*Junior Gallery, Ltd. v. Neptune Orient Line, Ltd.,*
  1997 U.S. Dist. LEXIS WL 26293 (S.D.N.Y. 1997)………… ……………….…………..…21

*Leonard F. v. Israel Disc. Bank of New York,*
  199 F.3d 99 (2d Cir. 1999)………………………………………………………………...5

*Lessord v. Gen. Elec. Co.,*
  258 F. Supp. 2d 209 (W.D.N.Y. 2002)………………………………….……………...16, 24

*McDonough v. Smith,*
  2016 U.S. Dist. LEXIS 180207 (N.D.N.Y. 2016)…………...……………………………3

*McNamara v. City of Long Beach,*
  249 F. Supp. 3d 684 (E.D.N.Y. 2017) …………………………………………………….4

*O'Connor v. Boeing North American, Inc.,*
  311 F.3d 1139 (9th Cir. 2002)………………………………………………………...15

*Ortiz v. City of New York,*
  755 F. Supp. 2d 399 (E.D.N.Y. 2010)……………………………………….................9

# TABLE OF AUTHORITIES
### (continued)

*Patane v. Clark,*
  508 F.3d 106 (2d Cir. 2007)…………………………………………………………....3

*Reed v. Garden City Union Free Sch. Dist.,*
  987 F. Supp. 2d 260 (E.D.N.Y. 2013)…………………………………………………3

*Romano et al. v. Town of Oyster Bay,*
  No. 601158/2017 (Sup. Ct. Nassau Cnty. 2017) …………………………………………6

*Sagendorf-Teal v. Cty. of Rensselaer,*
  100 F.3d 270 (2d Cir. 1996)…………………………………………………………7

*Sasmor v. Powell,*
  554 Fed. Appx. 67 (2d Cir. 2014) .......................................................................................4

*Seneca Meadows, Inc. v. ECI Liquidating, Inc.,*
  983 F. Supp. 360 (W.D.N.Y. 1997)……………………………………….………..19

*Sokolski v. Trans Union Corporation,*
  178 F.R.D. 393 (E.D.N.Y. 1998)……………………………………….………..22

*Suffolk County Water Auth. v Dow Chem. Co.,*
  121 A.D.3d 50 (2d Dept. 2014)…………………………………...…………...18

## Statutes

42 U.S.C. § 9658(a)(4) ....................................................................................... 7

42 U.S.C. § 9658(B)(4)(a) .................................................................................10

## Other Authorities

Federal Rule of Civil Procedure 12(b)(6)................................................................*passim*

Federal Rule of Civil Procedure 15(c)…………… …………………………………..21

N.Y. C.P.L.R. Section 214-c…………………………………………………..11

iv

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted in opposition to Defendants, Northrup Grumman Corporation's, Northrop Grumman Systems Corporation's (collectively "Grumman") Motion to Dismiss the Second Amended Complaint.  Pursuant to the Court's Order dated June 29, 2018, this Rule 12(b)(6) motion is supposed to address solely the claim that Plaintiff's Second Amended Complaint is time-barred.   While discovery has commenced, no documents have yet been exchanged and no depositions have been held. As shown below, all of the claims should be deemed timely or, at a minimum, the Court should deny the motion because the specific accrual date for each claim and individual requires findings by the trier of fact.

## STATEMENT OF FACTS

This action was commenced on September 13, 2016 with the filing of a Complaint against Grumman in Nassau County Supreme Court.  On November 4, 2016, the First Amended Complaint added the Town of Oyster Bay ("Town") as a co-defendant.  On May 4, 2018, the Second Amended Complaint ("SAC") added additional plaintiffs. All of the Plaintiffs are current or former residents of the Bethpage area, in the vicinity of the former Grumman facilities and the Town's Bethpage Community Park ("Park") (collectively, the "Site").  See SAC ¶1.  There is no dispute in this action that, as a result of Grumman's operations, the Site became contaminated with toxic and hazardous substances, which have permeated the soil and groundwater and created an ever expanding, multi-layered plume of contaminated groundwater in the surrounding area. See SAC ¶68-85; NYSDEC Records of Decision ("ROD"s) and Reports attached as Exhibits 1-4 to Grumman's moving papers. Despite years of environmental investigations and attempts at remediation, the contamination has not been removed, and in fact, continues to move with the groundwater, threatening public water supplies and residents in its wake. The

responsible parties for the above contamination, as identified in numerous public documents cited by the Defendants are Grumman, the Town, and the U.S. Navy. See SAC ¶¶68-85; NYSDEC RODs and Reports attached as Exhibits 1-4 to Grumman's moving papers.

As the public record shows, all prior attempts to investigate and remediate the Site focused on two main goals:  addressing the source areas of the contamination at the Grumman facilities and the Park and treating so called "hotspots" to try to prevent the contaminated groundwater plume from impacting public water supply wells.  See RODs, Grumman's Exhibits 1, 3, and 4; SAC ¶92.   There was also a NYSDOH study of cancer incidence in an area covering 20 blocks immediately adjacent to the Site. See Grumman's Exhibit 5.  During this entire period, in public meetings and documents, local residents were assured that they were not in harm's way because their drinking water was safe, the contamination was being contained, and their properties were not damaged. Every concern that was raised was quickly refuted by the Defendants and the state and federal agencies who oversaw the cleanup.  See Point III below. Furthermore, during this entire period and to this day, no one could define with certainty the exact contours of the traveling contaminant plume, except to show that it was growing and to advise that additional testing had to be done. SAC ¶¶86, 94, 95.

The first concrete evidence that Plaintiffs' own properties were, in fact, impacted by the contamination, came in April 2016, when some of the Plaintiffs (specifically, the putative class representatives) received the results of environmental testing conducted at their properties.  See Exhibit 8 to Grumman's motion papers.   The lab data proved the presence in the soil vapor of elevated and toxic levels of numerous volatile organic compounds, many of which were also present at the Site.     Plaintiffs allege that their claims accrued, at the earliest, when this data became available to them in April 2016, within five months prior to the filing of the complaint.

Additional injuries and impacts, which are latent, may have a later accrual period, depending on the time of their discovery and the discovery of their cause.

The Second Amended Complaint (¶6) alleges that Plaintiffs have suffered severe personal injuries and property damage as a result of the contamination at and emanating from the Site.  Many of them have developed cancer and other illnesses which are related to the chemicals used by Grumman.  SAC ¶¶10-36; 125, 128, 131, 134, 137, 140, 146, 152, 154, 157, 160, 163, 166, 169, 172, 175.   A few succumbed to these illnesses and are now represented by their estates. SAC ¶¶128, 143.   In addition, the contamination has reduced the value of their properties, both directly and through the stigma associated with living in or near a hazardous waste site.  SAC ¶253.  The relief sought by Plaintiffs is for their individual injuries, and, for the putative class of those exposed to the contamination, a comprehensive medical monitoring program and punitive damages. Furthermore, the putative class of plaintiffs who are current property owners seek compensation for the damage to their properties. SAC ¶¶125-182, 253, 262-285.

## POINT I
## STANDARD OF REVIEW

### A.  General Rules

otion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim "tests the legal sufficiency of the party's claim for relief." *McDonough v. Smith*, 2016 U.S. Dist. LEXIS 180207 at 8 (N.D.N.Y 2016) (citing *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007)). When ruling on a Rule 12(b)(6) motion, a court must accept the factual allegations contained in a complaint as true and draw all inferences in favor of the plaintiff. *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006); *Reed v. Garden City Union Free Sch. Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013). In order to defeat a Rule 12 motion, plaintiffs "need only plead 'a

3

short and plain statement of the claim,' with sufficient factual 'heft to show that the pleader is entitled to relief.'" *Id.* The Court may only dismiss a complaint if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). A court should find that a complaint has "facial plausibility" when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable. *Sasmor v. Powell,* 554 Fed. Appx. 67, 68 (2d Cir. 2014).

"In ruling on a motion pursuant to FED. R. CIV. P.12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010); *Hicksville Water Dist. v. Philips Elecs. N. Am. Corp.*, No. 2:17-cv-04442, 2018 U.S. Dist. LEXIS 53342, 2018 WL 1542670, at 6-7 (E.D.N.Y. Mar. 29, 2018). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *McNamara v. City of Long Beach*, 249 F. Supp. 3d 684, 688 (E.D.N.Y. 2017)(Hurley J.).

Applying the above principles to the Second Amended Complaint, it is clear that it states claims all of which are plausibly within the applicable statute of limitations. Defendants go into great detail examining various statements made in certain outside agency documents, as well as the meaning and significance of environmental testing results.  While their arguments are refuted below, they essentially go to the weight of the evidence and should not be considered on this motion. The only proper inquiry at this stage is whether, drawing all inferences in favor of the Plaintiffs, their claims may be found to be timely once all of the facts are known.

**B.  <u>Defendants' Exhibits Should Not Be Considered</u>**

In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken. *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999);  "[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion." *Giugliano v. FS2 Capital Partners, LLC*, 2015 U.S. Dist. LEXIS 118679, 2015 WL 5124796 (E.D.N.Y. 2015). In adjudicating this motion, the Court is permitted to consider: (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in [the] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence. *Envtl. Servs. v. Recycle Green Servs.*, 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014) (Spatt, J.).

Documents which are public records may only be used by the Court to demonstrate the existence of such a document or knowledge of a given fact at a particular time. *Abraham v. Town of Huntington*, 2018 U.S. Dist. LEXIS 84979, 12-13, WL 2304779 (E.D.N.Y. 2018), citing H*icksville Water Dist.,* 2018 WL 1542670 at 4. Thus, Exhibits 1 through 5 to Defendants' moving papers, which are public documents directly referenced in the SAC may be consulted by the Court, but not for the truth of the matters alleged therein.

In contrast, Exhibits 6, 7 and 9 are wholly inadmissible.   Exhibit 6 purports to be an email from Plaintiff Rosalie Romano to a DEC official.   This correspondence is not part of any public document identified in the SAC or relied upon by Plaintiffs, and Defendants do not identify it as such.   Exhibit 7 is an article purportedly downloaded from Plaintiffs' counsel's website.  It too, is neither referenced in the complaint nor a public record. *Id.* (court refused to allow use of an article from the webpage Hamptons.com because it is not a public record and does not fall within any of the above-mentioned categories of documents that may be judicially noticed.) Exhibit 9 is a chart created by Grumman and/or its attorneys for purposes of this litigation.   It is a misleading and disputed document (because it selects some results while ignoring the vast majority of others which support Plaintiffs' position).   It is not part of or referenced in the pleading.   It is certainly not a public record or other eligible document. Plaintiffs ask the Court to exclude Exhibits 6, 7 and 9 from use in this motion for any purpose.

**POINT II**
**THE LAW OF THE CASE IS THAT PLAINTIFFS' CLAIMS ARE TIMELY**

In their motion papers, both Grumman and the Town make extensive reference to the earlier proceeding in Nassau County Supreme Court, where the original Plaintiffs in this action requested leave to file late notices of claim against the Town, raising the same allegations and seeking the same relief as here.  See *Romano et al. v. Town of Oyster Bay*, No. 601158/2017 (Sup. Ct. Nassau Cty.)  The court initially denied the petition, but, upon re-argument, granted it and allowed the filing of the notices of claim.  See Short Form Order, entered September 12, 2017, attached hereto as Exhibit A.  By this, time, the Town was already a party to this action. Judge Brown's decision, which dealt directly with the statute of limitations applicable to the original Plaintiffs' claims, is on point and constitutes the law of the case.

"The 'law of the case' doctrine posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case." *Sagendorf-Teal v. Cty. of Rensselaer*, 100 F.3d 270, 277 (2d Cir. 1996). "Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991). "[T]he doctrine applies as much to the decisions of a coordinate court in the same case as to a court's own decisions." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988); *Hatteras Enters. v. Forsythe Cosmetic Grp., Ltd.*, 2016 U.S. Dist. LEXIS 100352, 2016 WL 4083386, at 5 (E.D.N.Y. 2016). Indeed, "'the policies supporting the [law of the case] doctrine apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation.'" *Id.*

In the notice of claim stage of the proceeding, the Town made the same arguments as Defendants make here, namely, that the residents of Bethpage were long on notice of the contamination through government and media reports and that, therefore, their claims are time-barred. See Town's Affirmation in Opposition to the motion for reargument, attached as Exhibit C hereto, at ¶21. Petitioners' counsel argued that the applicable standard for claim accrual, set out in 42 U.S.C. §9658(a)(4), required knowledge of a concrete injury and its specific cause. See Petitioner's Memorandum of Law in Support of Motion for Leave to Reargue, attached as Exhibit B hereto at pp. 5 – 10. See also, Affirmation in Reply, attached as Exhibit D hereto, at pp. 5-6 (¶¶24-28). Having carefully considered the above arguments, the court agreed with the Petitioners. See Short Form Order, Exhibit A, at pp. 2-4. Judge Brown ruled, *inter alia*, that: a) 42 U.S.C. §9658(a)(4) preempts state law accrual rules, if under those rules, accrual would occur

earlier than the date on which the cause of the personal injury was, or reasonably should have been, known to be the hazardous substance; b) the above standard applies to petitioners' claims; c) petitioners have provided evidence supporting the date of discovery of the contaminants (and the levels thereof) on their respective properties in April 2016;  d) petitioners' November 2016 Notices of Claim may be served *nunc-pro-tunc*. The above rulings constitute the law of the case.

A court faced with the same questions in the same action, should not revisit an earlier decision "in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice. *Colt Indus. Operating Corp*., 486 U.S. at 817. See also, *Chiari v. New York Racing Ass'n*, 972 F. Supp. 2d 346, 361-362 (E.D.N.Y. 2013), (courts are "understandably reluctant" to reconsider a ruling once made, especially when one judge or court is asked to consider the ruling of a different judge." Citing *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008).

Here, there has been no change in the law, no new evidence, and no any clear error that would justify a deviation from the law of the case.   While it is true that, recently, almost 11 months after the state court issued its decision, the Town filed a motion seeking to reargue and reverse it, the decision is currently in full force and has not been overturned[1].  Judge Brown's ruling must therefore be applied unequivocally.

Grumman may argue that the above decision does not apply to them because they were not a party to the Notice of Claim proceeding.  However, with respect to these defendants, the same legal principles and rationale for the decision hold true and should be given their full binding force, or, at the very least, highly persuasive weight.   This is especially true on this motion, where the Town essentially adopts Grumman's arguments, which, in turn, are an elaboration on the Town's own argument in state court.

---

[1] Plaintiffs will soon be filing their opposition papers with respect to that motion.

# POINT III
## ALL FACTUAL ISSUES MUST BE RESOLVED BY THE TRIER OF FACT

### A. Defendants Raise Questions of Fact Inappropriate on Motion to Dismiss

The adjudication of a statute of limitations defense is highly fact dependent. As such, "[a] motion to dismiss is often not the appropriate stage to raise affirmative defenses like the statute of limitations." *Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010).

In this motion, Grumman claims that the Court should examine the April 2016 soil vapor sampling results, attached by Plaintiffs in notice of claim proceeding and referenced in the Complaint here, and conclude that these results do not support Plaintiffs' claims of harmful and toxic levels of contaminants found on their properties. This conclusion is plainly incorrect. See Point IV below.  Such a factual inquiry, which will require expert testimony, a consideration of applicable contamination standards, and a careful analysis of the different testing results for each affected property, is not proper on a motion to dismiss pursuant to Rule 12(b).  In addition, these external documents may not be reviewed for the truth of the matters asserted. See *Hicksville Water Dist.,* 2018 WL 1542670 at 9-10.  Grumman attacks the sampling data for their contents, not the fact of their existence.

Moreover, Plaintiffs' claims do not rely solely on the violation of one or more regulatory standards in the referenced testing results.   In the aggregate, Plaintiffs allege and will show that their medical injuries, fear of cancer, damage and diminution of property values were caused by Defendants' failure to contain the plumes and prevent the pollutants from invading the soil, water and air at Plaintiffs' properties. Exactly when each of those claims accrued is an individualized factual inquiry that requires discovery and determinations by the trier of fact.

B.  **The Applicable Accrual Dates for Plaintiffs' Claims**

Plaintiffs' claims fall into two categories:   personal injury and property damage.    With respect to both, the first prong of the inquiry must be when the injury or damage actually occurred, or, in case of a latent injury, when it was discovered.  Everything that happened prior to that time is irrelevant.  The evidence will show that some of the plaintiffs' personal injuries and wrongful death claims occurred within three years of the filing of the complaint in this action in September 2016, or subsequently.[2]   Determining the exact date with respect to every individual plaintiff will require a factual inquiry.  With respect to the property damage claims, there could be numerous questions of fact relating to when the toxic substances from the spreading plume may have reached each plaintiff's property, when the contamination was discovered, when the diminution of value was or reasonably could have been ascertained and when stigma damages began to be manifested.   At this point, Defendants have no basis for claiming that any of these occurred outside the applicable limitations period.

Even if, taking an improbable logical leap, the Court was to assume that every plaintiff's injury and every property damage claim occurred more than three years prior to the commencement of this action, it would have to proceed to the second stage of inquiry regarding the discovery of the injury. The federally required commencement date ("FRCD") contained in 42 U.S.C. §9658(B)(4)(a) requires that the injured party know "that the personal injury or property damages […] were caused or contributed to by the hazardous substance or pollutant or contaminant concerned."   In *Freier v. Westinghouse Elec. Corp.*, 303 F.3d 176 (2d Cir. 2002), the Second Circuit confirmed that  42 U.S.C. §9658(B)(4)(a) preempts state law accrual rules if,

---

[2] This includes the wrongful death claims of Patricia Glueckert, whose husband died in 2016 and Flo Raucci, whose husband died in 2015.   At least several other named plaintiffs also fall into this category, including Jennifer Gallante (diagnosed in 2017), Theresa Meade (diagnosed in 2016), Jackie Lieberman (diagnosed in 2014), and Glen Falino (diagnosed in 2017).

10

under those rules, accrual would occur earlier than the date on which the cause of the injury was, or reasonably should have been, known to be the hazardous substance.   As applied to the pre-existing New York state rule set forth in CPLR Section 214-c, plaintiff has one year from the date of discovery of the cause of the injury to commence a lawsuit or three years from the date of discovery of the injury, if longer. This is true even if more than five years have elapsed since discovery of the injury. *Id*. at 210-211.

In order to determine exactly when the requisite information became available to each plaintiff, the Court would have to conduct separate factual inquiries, one for personal injury and one for property damage claims. For personal injury claims, it would have to review medical information for each plaintiff, information which has not yet been exchanged in discovery, to establish the date when each individual was first diagnosed and, therefore, apprised of her illness. *Annunziato v. City of New York*, 224 A.D.2d 31, 37-38 (2d Dept. 1996) (date of diagnosis required for CPLR 214-c analysis).  Then, there would be questions about when a link was or should have been established between that condition and the Grumman Site.   There is no question that the April 2016 testing results, obtained just months before the commencement of this action, offer some evidence of the property damage by some of the pollutants and the resulting health exposure.   The testing, however, was limited in scope, and certainly cannot reflect the full extent of the presence of hazardous substances or apprise plaintiffs of their exposure at other locations such as neighboring properties and the Park.

For the property damage claims, if Plaintiffs' proposed accrual date is rejected, documentary evidence, depositions, and expert testimony would be necessary to establish other accrual dates for each type of physical and financial damage.  Any attempt to do so will likely

involve investigations into the known extent of the contamination in various years, the public's knowledge of such contamination, and each specific plaintiff's knowledge as well.

### C. **The "Reasonably Should Have Known" Test Requires Specific Objective Knowledge**

Since Defendants cannot allege that each of the Plaintiffs suffered each of the alleged injuries and damages or even actually discovered these prior to the limitations period, they are left arguing only the last speculative prong of the statute of limitations, that all Plaintiffs reasonably should have known the cause of their injury long ago.  In this regard, the *Freier* court held that the FRCD "focuses on knowledge, acted or imputed, not on suspicion. Mere suspicion, whatever its reasonableness, cannot be equated with knowledge." *Id*. at  205-206.  In that case, the existence of numerous government and media reports about contamination at a nearby Landfill was deemed to be insufficient to serve as trigger for the claims. Whereas the lower court had said that these documents "establish[ed] that a highly publicized controversy existed within the local community over whether the Landfill posed a threat to the health and safety of those who resided or worked in the vicinity of the Landfill," the Second Circuit ruled that this was not the standard for "reasonably should have known".   In addition, it pointed out that the government reports, including the Department of Health study, were either equivocal as to whether the Landfill could be causing cancers or contained outright denials of such causation. *Id.*at 208.

This is also the case in Bethpage.  Every DEC report referenced by the Defendants contains the assurance that the remedy chosen is protective of public health and the environment and that no adverse impacts to health or property are anticipated.  For example, the 2013 ROD for OU3 (Defendants' Exhibit 1) specifically advised that "soil vapor intrusion is not a concern for off-site buildings" and that "people are not drinking the contaminated groundwater" (p.13).

In the Responsiveness Summaries, in response to the concerns raised by the public and cited by the Defendants, the DEC repeatedly assured residents that there is nothing to worry about.  Thus, the State denied that there could be any contamination of drinking water (p.A-4 Response 5; p. A-9, Response 27), stated that there is no expected off-site impact from PCBs (p. A-7, Response 21), and advised that "[t]his ROD, along with the OU2 groundwater remedy already in place and ongoing efforts to optimize the OU2 groundwater remedy as well as the Wellhead Treatment Contingency Plant (WHTTCP) will mitigate the impacts of and prevent exposure to the contaminated groundwater plume."  The 2003 ROD also stated that, based on DEC and DOH evaluations of soil vapor, indoor and outdoor air data collected from the Bethpage High School property, there is no likely health risk and no need for regular testing (p. A-8, Response 24). See also p. A-13 Response 38, stating that there is no impact on indoor air of residential or school buildings located near OU3. With respect to specific questions about cancer risk, the DEC reminded residents that cancer is very common (p. A-10, Response 29), that the Department of Health Study did not find any increased risk of the most common types of cancer and that higher rates of bladder cancer and thyroid cancer also occurred in other areas of Long Island (p. A-9, Response 28).  The State noted that there will be a future public health assessment for past exposures to contaminated groundwater (p.A-11, Response 30).  Residents were also assured that there is "no potential exposure to site-related contaminants by eating vegetables grown in such a backyard garden" [referring to yards located over the OU3 plume] (p. A-14, Response 43).

Similar assurances of safety were provided in the 2001 ROD for OU-2 (Defendants' Exhibit 4).  Residents were advised that, based on tests of surface soils in residential areas next or near the Grumman Site, growing vegetables and fruit trees on the property "is not a route of potential exposure" (p. 46, Response 21).   With respect to the impact on the sale value of the

property, the DEC explained: "Technically speaking, there is no defect in your property.  The plume, for the sake of argument, may be passing in the groundwater, beneath your house. However, there's no exposure pathway for you to come in contact with the dissolved contamination that's more than fifty feet below in the groundwater." (p. 46, Response 22).   To a resident who asked for testing of his property, the reply was, "[t]here is no reason to do that with respect to your particular site. The areas around the facility that were thought to have the potential to be impacted, for instance, from a surface deposition of contaminants, were tested and there was no problem found. The area where you live is too far from the plant site itself to have any surface contamination from operations at the facility, and there's absolutely no way for your property to be contaminated by groundwater 100 or 200 or 400 feet below, it's just not possible."

The NYSDOH Study dated January 2013 (Defendants' Exhibit 5) studied a limited 20-block residential area directly adjacent to the Site, not covering Plaintiffs' properties.   As conceded by all parties, the study concluded that there were no statistically significant higher incidences of certain types of cancer, which could be specifically linked to the Site.   In fact, it concluded "[t]he information that was available did not indicate any unusual patterns of cancer in the area of the two sites" (at p. 8), and found "no clear relationship between the occurrence of cancer or the type of cancer identified and the levels of contaminants found in the homes." (*Id.* at p. 18.) Thus, this document could, at best, serve to allay any incipient public fears rather than put Plaintiffs on notice of a health risk at their residence.

In *Freier* (at 210), the court stated:

> In sum, many studies had been done by two State agencies, DOH and DEC. There is no evidence that they found the Pfohl Landfill to cause cancers, and the record is replete with evidence that the State officials repeatedly assured residents, both through the publicized reports and in personal meetings, that there was no evidence of such causation. We cannot endorse the proposition that, as a matter of law, when reports issued by the responsible public officials stated that there was

14

no provable link between the cancers and the Landfill, members of the public reasonably should have known to the contrary.

The same exact reasoning applies here. In *Collins v. Olin Corp.*, 2009 U.S. Dist. LEXIS 5444, 2009 WL 279027 (D. Conn. 2009), defendants also argued that publicity, public meetings and communications with the DEC established that plaintiffs should have known that the contamination in their neighborhood was caused by defendant, Olin Corp.  The court, however, rejected that argument, pointing out that, even if the plaintiffs may have had substantial suspicions that the contamination in the neighborhood was caused by Olin, and that the contamination was likely to extend beyond the tested areas of the Hamden Middle School, public parks and rights-of-way, they could not have known that the contamination reached their properties until they received the specific test results from the EPA. "At a minimum," the court held, "a material question of fact exists as to whether any plaintiff reasonably would have known, rather than merely suspected (prior to receiving the EPA's test results) that they had or would suffer harms as a result of Olin's contamination of the neighborhood."  *Id*. at 21-22.

When analyzing the FRCD, the court must look not only into when a plaintiff might be expected to inquire into the cause of his injury, but also whether such an inquiry would discover the nature and the cause of the injury so as to put him on notice of his claim. See *O'Connor v. Boeing North American, Inc*., 311 F.3d 1139, 1150 (9th Cir. 2002).    Here, it would appear that any inquiry that Plaintiffs could make of the state agencies in charge of supervising the cleanup of the Site would have led them to believe the opposite, that they have no property damage and that, if they have any physical injuries, these are not related to the Site.   Certainly, the Defendants themselves did not inform Plaintiffs that Grumman's pollutants caused their injuries, and they continue to deny this fact.  As shown above, this test is only relevant for the subset of individual Plaintiffs and claims where the actual date of injury may be found, after fact-finding,

15

to be beyond a three-year time limit or any tolled statute of limitations.  However, even then, it could only lead to the conclusion that no ordinary inquiry would have apprised those plaintiffs of their claims.

Should Plaintiffs have gone ahead and commissioned private environmental testing at some earlier date?   The courts have clearly answered that question in the negative:

> With respect to the question of whether plaintiffs should have done more, sooner, to ascertain the cause of their injury, I also note that in *Freier*, the Second Circuit stated that it did not believe that either Congress or the New York Legislature, in making the triggering of the limitations period dependent on when a plaintiff "reasonably should have known" of the cause of his injury, or on whether scientific or medical knowledge existed that was sufficient to permit that cause to be ascertained, "meant to refer to scientific knowledge that would not have been available to a plaintiff without the expenditure of huge sums of money to commission independent studies," or "to information that was obtainable only through the private commissioning of expensive studies." 303 F.3d 176, 2002 WL 1870450, at *27. Certainly, then, it would be inappropriate as a matter of law to find plaintiffs' claims time-barred merely because they did not undertake to go beyond what the DEC had done and have their own tests performed to try to ascertain sooner the nature, extent and source of the suspected contamination.

See *Lessord v. Gen. Elec. Co.*, 258 F. Supp. 2d 209, 220 (W.D.N.Y. 2002)

To sum up this point, Plaintiffs' claims could not have accrued before the actual occurrence of their injuries.  They could not have accrued before they discovered their injuries, including their specific cause, as required by the FRCD.  General concerns, media coverage, or reports relating to the Grumman Site did not constitute notice.  Plaintiffs were entitled to rely on safety assurances from the responsible government agencies. Plaintiffs were not required to conduct private environmental investigations.

**POINT IV**
**PLAINTIFFS' TESTING RESULTS SUPPORT THEIR CLAIMS AND ARE ONLY**
<u>**ONE COMPONENT OF A FACTUAL INQUIRY**</u>

**A.**   <u>**Environmental Test Results (Defendants' Exhibit 8) Present Fact Issues**</u>

Defendants devote several sections of their argument to parsing and attacking the content

and meaning of certain environmental testing data produced by Plaintiffs (Exhibit 8).   In doing

so, they even take a selective portion of the data, without any context, and attempt to draw

misleading and incorrect conclusions, which they present in their self-created chart, Exhibit 9.

As stated above, Exhibit 9 is not admissible in the context of a motion to dismiss and should be

disregarded.  With respect to Exhibit 8, the Court should recognize it for what it is, a compilation

of highly technical scientific sampling data that requires, by its nature, expert analysis and

testimony for a full understanding of its import.  For purposes of this motion, the only proper use

of these testing data is to note the date when it was received, April 11, 2016, found in the top

right hand corner of each page.  This date or sometime after it, is the earliest possible date when

the proposed class representatives could have obtained concrete information about the presence

of toxic substances in the soil vapor at their properties.   All other questions which Defendants

attempt to raise and which go to the content and meaning of these documents must await an

inquiry by the fact finder and cannot form the basis of any legal conclusions.

**B.**   <u>**The Test Results Show Numerous Exceedances of Applicable Standards**</u>

Only as an alternative argument and to show the factual flaws in Defendants' allegations, a

cursory review of Exhibit 8 data will show that, at each of the properties tested, multiple

hazardous volatile organic compounds were found present at levels which are above federal or

state regulatory limits.  These high levels are flagged in the column called "Result".   Looking at

that column for each of the tested properties, one can count that the number of hazardous volatile organic substances found at abnormally high levels is as follows, for each address:

3 Kay Avenue – 23;      159 11th Street -23;    40 Martin Road -24;   15 N. Robert Damm – 15;

8 Hoover Lane – 25;      7 Ceil Place -26;      19 Virginia Lane – 10;      17 Keats Court – 15

The properties listed above include all of the addresses of each of the proposed class representatives.   Of the various chemical substances found to be present at elevated levels, many are also found at or emanating from the Site.   Defendants cannot deny this, but if they choose to do so in the future, an examination of the relevant reports and data will corroborate this fact at the appropriate stage of the litigation.   The only relevant and salient point made here is that the test results did and do show a plausible connection between Defendants' activities and the contamination of Plaintiffs' properties.

In addition to raising various technical questions of fact, Defendants' point that certain chemical substances included in Exhibit 8 resulted in a finding of ND, meaning non-detect, is irrelevant to the legal questions in this case. A regulatory standard may be helpful in determining whether an injury has occurred, but it does not set a bar below which an injury cannot have occurred.   See *Suffolk County Water Auth. v Dow Chem. Co.*, 121 A.D.3d 50, 56 (2d Dept. 2014).   Plaintiffs' claims are broad and encompass various physical and psychological injuries, some of which may have been caused by levels of contaminants and types of exposure that were below or different from those reflected in a particular soil vapor test.

**C.   The List of Pollutants is Not Limited to Those Shown in Exhibit 8**

The Second Amended Complaint expressly alleges that Grumman used at the Site and improperly disposed of numerous "toxic contaminants and manufacturing byproducts such as arsenic, cadmium, chromium, lead, mercury, polychlorinated biphenyls ("PCBs"), metals, and

volatile organic compounds" (¶3), as well as radioactive materials (¶39) and waste oil (¶51-52). Plaintiffs further allege that the Town of Oyster Bay, which was also identified as a responsible party due the extensive contamination at the Park, had to remove 175,000 cubic yards of soil contaminated with the chlorinated solvents, PCBs, metals and Freon compounds dichlorodifluoromethane (R-12) and chlorodifluoromethane (R-21) (SAC ¶65).   None of the Defendants deny these allegations.

At this early stage of the litigation, it is impossible to assess which of the above toxic substances affected each individual Plaintiff and via what exposure pathway. In saying this, Plaintiffs are not claiming that it is necessary for a plaintiff to know the identity of each defendant's specific contaminants that damaged the property before the statute of limitations begins to run." *Seneca Meadows, Inc. v. ECI Liquidating, Inc*., 983 F. Supp. 360, 364 (W.D.N.Y. 1997).  On the other hand, the court in *Gen. Elec. Co.*, 258 F. Supp. at 219, warned that "Plaintiffs in toxic tort cases, then, should not be encouraged to take a shotgun approach and sue everyone who might be liable, before they have an evidentiary basis for asserting a claim."   The kind and quantity of testing that may be necessary to establish an accrual date for the various categories of contaminants is in itself a question of fact.

### D.  The Two-Injury Rule

As the facts in this case are developed, it may become evident that, for certain plaintiffs, the two-injury rule applies.  This rule states that "where the statute of limitations has run on one exposure-related medical problem, a later medical problem that is separate and distinct is still actionable. Under the two-injury rule, diseases that share a common cause may nonetheless be held separate and distinct where their biological manifestations are different and where the presence of one is not necessarily a predicate for the other's development. *Golod v. La Roche,*

964 F.Supp. 841, 850-851 (S.D.N.Y. 1997); *Conforti v. County of Nassau*, 41 Misc. 3d 1236(A)

(Sup. Ct. Nassau Cty., 2013) (internal quotations and citations omitted).

As applicable here, some of the Plaintiffs may have been diagnosed with one illness at an

earlier date and another condition at a later date, the latter being within the statute of limitations.

Furthermore, since we are dealing with a situation of continuing exposure, latent diseases, and

long term impacts, certain Plaintiffs have and/or will develop new or additional injuries during

the course of this litigation. Although the pleadings do not and cannot go into this level of detail,

medical records obtained in discovery will show such facts.  With respect to property damage

claims, since the contaminant plumes continue to flow and spread, changing in depth, potency

and chemical composition, it is possible that new damages have and will accrue. For this

additional reason, it is premature to discount as time-barred, the claims of any plaintiff or

putative class member.


## POINT V
## NON-RESIDENT PLAINTIFFS' CLAIMS ARE TIMELY

### A.  Class-Action Tolls the Claims of All Plaintiffs

The non-resident Plaintiffs, specifically Maryann Herbert, Christina Andrews-Sales,

Christopher Cagna, Jackie Lieberman, Catherine Lewonka, Eugene Connolly, Viviane

Blickensderfer, Dana Blickensderfer, Glenn Falino, Marcia Falino and Michael Falino, were

added to the class action with the filing of the Second Amended Complaint in May 2018.  These

are people who do not currently reside in the Bethpage area, but did so during the relevant

periods and were exposed to Grumman's contamination. SAC ¶¶154-177.  Except for the

property damage claims, their claims for relief are the same as those of the other plaintiffs.   The

factual basis for their claims, the chemicals from the Site caused or contributed to their injuries, is also the same.

It is well-established that a federal statute of limitations is tolled while a putative class action is pending. See *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974). In other words, when a named plaintiff files a class action, the statute of limitations period is tolled for the individual claims of each of the other class members. That tolling extends until "class action status is denied." *Id*.; *Giovanniello v. ALM Media, LLC*, 726 F.3d 106, 116 (2d. Cir. 2013). The Second Circuit has recognized class-action tolling pursuant to New York law. See, *e.g.*, *Cullen v. Margiotta*, 811 F.2d 698, 721 (2d Cir. 1987).

The non-resident plaintiffs belong to each of the putative subclasses represented by the original class representatives, except for the property damage class. Thus, their claims were tolled in September 2016, when the class action was initially filed, and remain timely today.

B. **The Relation Back Rule Applies**

Fed. R. Civ. P. 15 (c) provides for the relation back of an amended pleading to the date of the original pleading when:

2. the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading

Although Rule 15(c) refers only to an amendment "changing the party," it has been held by courts and commentators that said provision also allows for the addition of parties, provided that the requisite notice has been given and the identity or similarity of interests is shown. *Junior Gallery, Ltd. v. Neptune Orient Line, Ltd*., 1997 U.S. Dist. LEXIS 499, 1997 WL 26293, at 6 (S.D.N.Y. 1997); *Andujar v. Rogowski*, 113 F.R.D. 151, 154-155 (S.D.N.Y. 1986). "Allowing an amendment to relate back under Rule 15 (c) is proper 'when the status of the original plaintiff

21

and a liberal reading of the complaint apprise defendant of the existence of additional plaintiffs existence and claims,' or 'if the defendant has had actual notice that additional parties might assert claims arising out of the transaction or occurrence at issue." *Sokolski v. Trans Union Corporation*, 178 F.R.D. 393, 398 (E.D.N.Y. 1998) (*quoting from Andujar*, supra, 113 F.R.D. at 158).

In *Andujar*, the court cited the 1966 amendments to Rule 15 in holding that "if the prerequisites prescribed in Rule 15(c) have been met, the addition of a party under Rule 21 should relate back and prevent the successful interposition of a statute of limitations defense." *Id.* at 155.

The action here was instituted as a class action on behalf of the named Plaintiffs and "all others similarly situated." SAC caption.   The pleading plainly states: "Plaintiffs and the Class are all individuals who are and/or were residents and/or property owners of/in the Bethpage area of Nassau County, New York."   SAC ¶1.   Extensive sections of the complaint (¶¶178-181, 253-281) refer to class claims and/or common allegations.    All of these clearly put Defendants on notice that there may be, and in fact are, additional plaintiffs and claims.  These claims indisputably arise from the same conduct of the Defendants, namely, their disposal of and failure to remediate hazardous substances at emanating from the Site.  The Defendants have been on notice of these claims from the beginning of this action.

Defendants claim that the plaintiffs who were added by the amendment should be subject to a separate inquiry with respect to the statute of limitations.  Both the class action tolling rule and the relation back rule belie this argument.

## POINT VI
## RESPONDING TO TOWN OF OYSTER BAY'S MEMORANDUM IN SUPPORT

The Town of Oyster Bay did not file a separate motion or cross motion to dismiss the SAC.   It merely filed a brief in support of Grumman's motion, which essentially adopts the arguments made therein.    Thus, to the extent that the Court grants any relief to Grumman, such relief should not be extended to the Town.

With respect to the timeliness of Plaintiffs' claims against the Town, Point II above already addresses the fact that the law of the case, as set forth in the September 12, 2017 Short Form Order (Exhibit A hereto, also attached as Exhibit B to the Town's papers) is that the claims are timely.   The proceeding for leave to file late notices of claim was between the Plaintiffs and the Town.  Plaintiffs' claims were based on the same operative facts and sought the same relief. Moreover, the Town's argument, as Grumman's here, was that public records and media coverage should have alerted petitioners to their claims and triggered the statute of limitations. For that reason alone, the Court should allow all claims against the Town to move forward.

Plaintiffs' other arguments in opposition to the Grumman's motion also apply equally with respect to co-defendant, Town.  The Town's attempts to portray itself as an innocent owner, despite over five and a half decades during which it has owned the Park and allowed the contaminant plume from it to migrate and spread (SAC ¶¶59-67), are both unavailing and irrelevant.  As per this Court's Order dated June 29, 2018, the only legal issue addressed by this motion is whether the claims are time-barred.    As shown above, they are not.

The only public document contained in the motion which directly addresses the contamination in the Park is the 2013 ROD for OU-3.  (Grumman's Ex. 1).   It describes a remedial remedy for the on-Site contamination in the Park and a proposal to treat one hotspot in the OU-3 plume. *Id.* at p.1.  Nothing in this document could have advised Plaintiffs that their

23

own homes, which are at some distance from the Site, had been impacted or that their health was in jeopardy.  In fact, as shown the numerous responses cited above (Point III-C), local residents were assured that they were not being exposed to harmful chemicals in any fashion and that there was no increased cancer risk attributable to the Site.   Thus, neither this nor any other document presented by Defendants could have triggered the running of the statute on the claims against the Town.

## CONCLUSION

A pervasive theme in opinions applying the FRCD is that, in the absence of actual knowledge, determining when a plaintiff reasonably should have known of his or her injury and its cause is often a fact-intensive matter which courts are ill-equipped to resolve on summary judgment. Courts profess unwillingness to invade the purview of the jury and resolve conflicting inferences as to when a plaintiff reasonably should have known of the existence and cause of injury, electing instead to leave these fact-bound questions for the jury at trial. *See, Lessord v. GE, supra.*

The above principle, though expressed in a case involving a summary judgment motion, is all the more persuasive here, where the standard on a motion to dismiss is even more favorable to the non- moving party.   Plaintiffs have filed a detailed Second Amended Complaint that presents claims that are plausible on their face.  Accepting all facts therein as true, the Court should conclude that both the personal injury and property damage claims are timely or, at a minimum, that there are multiple questions of fact that make it impossible to rule, at this early stage, when each of the claims accrued.

For the reasons stated herein, the Court should deny Defendants' motion and grant such other and further relief as it may deem proper and just.

Dated:  September 14, 2018
         Melville, New York

                                           **NAPOLI SHKOLNIK PLLC**
                                           *Attorneys for Plaintiffs and the Proposed Class*

                                         By: _____
                                         Lilia Factor, Esq.
                                         360 Lexington Ave., 11th Floor
                                       New York, NY, 10017
                                       Tel: (212) 397-1000
                                       lfactor@napolilaw.com

TO:  Jessica Kaufman, Esq.
      MORRISON & FOERSTER LLP
      250 West 55th Street
      New York, NY 10019
      jkaufman@mofo.com

      Peter F. Tamigi, Esq.
      MILBER MAKRIS PLOUSADIS & SEIDEN, LLP
      1000 Woodbury Rd., Suite 402
      Woodbury, NY 11797
      ptamigi@milbermakris.com