UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

*IN RE: Romano v. Northrop Grumman Corp. et al.*, No. 16-cv-5760
    *Ackerman v. Northrop Grumman Corp.*, No. 18-cv-4397
    *Ackerson v. Northrop Grumman Corp.*, No. 19-cv-942
    *Ball v. Northrop Grumman Corp.*, No. 19-cv-4381
    *Cammarata v. Northrop Grumman Corp.*, No. 20-cv-0511
    *Cornett v. Northrop Grumman Corporation*, No. 18-cv-06453

**JOINT SUBMISSION FOR
DECEMBER 3, 2020 CONFERENCE**

Dear Judge Brown:

In advance of the status conference, the parties respectfully submit the following, as the parties were unable to resolve their differences regarding discovery.

**Plaintiffs' Summary of Discovery**

Plaintiffs' Third-Party Discovery:

Plaintiffs have served a total of eight (8) subpoenas and Touhy requests for documents to the following: Bethpage Water District, Nassau County Department of Health, Nassau County Department of Public Works, New York State Department of Health, U.S. Air Force, U.S. Environmental Protection Agency, U.S. Geological Survey, and NASA. Prior to serving these requests, plaintiffs' counsel provided an opportunity to defense counsel to comment on each subpoena, which they declined. Copies of each final subpoena have been shared with all counsel. To date, plaintiffs have received partial document productions from the Bethpage Water District, the Nassau County Department of Public Works, the Nassau County Health Department[1] and the New York State Department of Health. On November 10, 2020, Plaintiffs updated Defendants on the status of the responses from each agency. On November 19, 2020, Plaintiffs issued a supplemental subpoena duces tecum to Nassau County Department of Health, requesting various records relating to air emissions from the former Grumman facilities. A chart of the current status of each of the above document requests is annexed as Exhibit 1 hereto.

Each of the agencies, both federal and local, have advised plaintiffs that their official offices remain closed or have limited access. Many of their employees are working at home, such that compiling responsive documents, especially those that are not in electronic form, is very difficult. Unfortunately, Grumman has taken the position that Plaintiffs need to go to these agencies, regardless of the fact that much of this information is in Grumman's possession and control.

---

[1] The documents from Nassau County Health Department were recently received and are being bate stamped for service on all the parties.

Discovery from the Town of Oyster Bay:

The Town of Oyster Bay has advised that it has provided all responsive documents in its possession, including documents previously provided by its consultant, H2M. Plaintiffs are still reviewing these documents. Furthermore, the Town of Oyster Bay produced a privilege log relating to its earlier document production. Plaintiffs are reviewing the privilege log for potential challenges and, if there is no agreement, will bring the issues to the Court's attention. The Town has also agreed to produce, but has not yet provided, certain historical documents relating to the donation of land and the construction of Bethpage Community Park, which was originally part of the Grumman facilities.

Discovery from the Northrop Grumman Defendants:

At the prior conference on July 29, 2020, the Court lifted the stay of discovery and directed Grumman to produce, additional documents and information relevant to the claims at bar, including, but not limited to "things that were dumped in massive quantities, or things that weren't cleaned up, or things that have been identified in the remediation process". (Conference Transcript, p. 49, Exhibit 2 hereto). Grumman made a supplemental document production on October 30, 2020, which, it stated, was intended to provide documents from the period prior to 1987 and post 2016. Plaintiffs are reviewing these and previously produced documents.

After the conference, plaintiffs have written and discussed with defendants the additional information they need. By letter dated September 1, 2020, Plaintiffs provided focused requests limiting the requested discovery to the Grumman facility formerly operated by Grumman in Bethpage, the Bethpage Water District and the contaminant plumes coming from the Grumman site. Plaintiffs also asked for

- o Information on the use and disposal of toxic or hazardous substances, solvents, oil and waste oil, radium, and products containing 1,4-dioxane, and products containing PFOS/PFAS at the Grumman site. [2]

- o documents relating to any of the above substances sampled, detected and/or treated in off-site soil, groundwater, air, and/or soil vapor in the Bethpage area.

- o documents reflecting the adverse health impacts of the above substances, including complaints or concerns of injury to any person potentially exposed to the chemicals on and off-site, communications with any and all of the impacted water districts, communications with school districts in the Bethpage area, communications with local and state health departments, the DEC, and the EPA, the Navy, and the Town of Oyster Bay.

---

[2] In making these targeted requests, in accordance with the Court's direction (Transcript, p. 32), Plaintiffs did not waive the broader categories of documents demanded in their original First Set of Document Demands and First Set of Interrogatories.

2

- documents relating to the impacts of the groundwater contaminant plumes on drinking water supplies in the Bethpage area.

- existing groundwater and vadose modeling reports and modeling files in the Bethpage area, including modeling reports and files in your possession that were obtained from the NYSDEC in connection with the 2019 Amended ROD.

- on-site and off-site (groundwater and vapor) monitoring data, in native format (laboratory reports).

Further we provided a list of requested custodians and a list of search terms.

In meet and confers regarding the above request, the plaintiffs agreed, as an interim compromise, to narrow the list of eight (8) requested custodians to four (4) individuals. Plaintiffs also agreed to edit or eliminate certain search terms in such a way as to avoid false and irrelevant hits. Plaintiffs further requested, and Grumman tentatively agreed, to produce their discovery files in the related cases. The related cases were set forth in the parties' joint submission to the Court, dated August 5, 2020, a copy of which is annexed as Exhibit 3 hereto. These documents were already reviewed and produced by counsel in the prior litigation, are clearly relevant, and their production would not present an undue burden.

More recently, after discussing with our consulting experts, plaintiffs served a focused discovery request relating to the air emissions. See Plaintiff's Second Set of Document Demands annexed as Exhibit 4 hereto. This is because, during the over 50 years of operations at the Grumman site, defendants' industrial processes discharged toxic substances, including TCE and hexavalent chromium, into the air. These pollutants spread across the nearby residential areas exposing putative class plaintiffs. Plaintiffs are entitled to further discovery and documents from defendants relating to this and other routes of exposure, which are expressly pleaded in their complaints. See, *e.g.* Romano SAC ¶¶106-107, 115, 179.

While it seemed that the parties were close to reaching a compromise on the above issues, Grumman insisted on making their further disclosures expressly contingent upon Plaintiffs agreeing to various demands relating to defendants' demand for a Lone Pine Order, which the Court has not approved. See parties' correspondence regarding the supplemental discovery, copies of which are annexed as Exhibit 5 hereto.

First, plaintiffs do not believe as a condition for obtaining the discovery from Grumman they must first provide expert reports supporting causation and damages. The Court has made it clear that, before any discussion of individual claims or the merits, Plaintiffs should obtain the discovery they need. Specifically, the Court directed Grumman "to be forthcoming with information, so that we can get to the point where we know what we're dealing with". Transcript, Ex. 2, at p. 44.

Second, plaintiffs need these documents to show the nature and extent of their exposure to the community and individual plaintiffs. They have never been disclosed to plaintiffs and been hidden from the government for decades. Recently, Newsday uncovered a trove of

3

documents which Grumman has failed to provide in this litigation. Among other things, they show that that Grumman knew it was polluting the region's groundwater supply as early as the 1950s, while continuing to publicly deny any liability.[3] For example, one such document shows that in June 1976 — after TCE had been found in a private Grumman well at a level 100 times today's drinking water standard — the company's environmental consultant concluded that "sources of contamination consisting of basins, lagoons, spills, etc. have created a slug of contaminated ground water in the shallow aquifer underlying at least part of the plant." Among the most important threads that emerge is Northrop Grumman's development of a computer model that substantially underestimated how much the plume would grow. In 2000, it predicted that the toxic contamination wouldn't reach public water supply wells beyond Bethpage in at least the next 30 years. Within a decade three additional wells required treatment. The modeling was particularly important because it was used by the state as a basis for developing limited, less-expensive cleanup plans that failed to stop the spread. Grumman has refused to provide us this and other models it created.

In March of 2020 Rep. Thomas Suozzi urged the House Appropriations Committee Thursday to significantly boost the federal budget for cleaning polluted former U.S. Navy sites, citing the Grumman groundwater contamination plume's continued spread through Bethpage and beyond. In his arguments Suozzi cited Newsday's recent investigative series "The Grumman Plume: Decades of Deceit." The series of stories detailed a history of deceptive statements, missteps and minimization — from both Grumman and regulators — that helped slow cleanup of the groundwater pollution that has become Long Island's most intractable environmental crisis. https://www.newsday.com/long-island/investigations/grumman-plume-suozzi-bethpage-1.42965718. Other officials have weighed in as well. Gov. Andrew M. Cuomo and other top New York officials in February 2020 criticized aerospace giant Grumman for keeping information secret and dragging out the cleanup of an underground contaminated plume that's been spreading for more than 50 years. https://www.newsday.com/news/region-state/cuomo-grumman-plume-1.41984788 . Prospective home buyers shy away from the community because of the Grumman stigma.

Third, evidence of human health effects abounds, but defendants' dilatory tactics and lack of information has hampered the investigation. Bethpage Water District's ("BWD") Well 6-1 was first taken offline in 1976 due to TCE contamination, but not before exposing residents for decades to high levels of this carcinogenic chemical. Defendants' repeated statements that the drinking water was and is safe are unfounded. It was only last year that the New York Department of Health stated, for the first time, that levels of TCE in Bethpage public water before 1976 were high enough to harm people's health.[4] Indeed, after misleading the community about the safety of the drinking water, Grumman paid millions to BWD to remediate some of the contamination Grumman caused. In the last few years, BWD discovered that its wells were contaminated with 1,4-Dioxane, an additive that was used as a stabilizer for TCE and other solvents. As a result, BWD is undergoing a $19.5 million dollar treatment system overhaul, but this is only after more than 25 years of exposure to its residents. This summer, New York State passed a law setting a Maximum Contaminant Level (MCL) of 1.0 parts per billion for 1,4-Dioxane and 10 parts per trillion for perfluorooctanoic acid

---

[3] Newsday, Feb. 18, 2020, "The Grumman Plume, Decades of Deceit".
[4] Health Consultation, NYS Department of Health, May 23, 2019.

("PFOA") and perfluorooctanesulfonate ("PFOS"), collectively "PFAS". All of these contaminants, likely coming from the Grumman site, have been detected in the BWD water supply. Further detections of elevated levels of radium in 2013 led BWD to shut down Well 4-1. 308. Subsequently, testing of monitoring wells at the Bethpage High School and the Central Boulevard Elementary School conducted in 2017 revealed elevated levels of radium. On information and belief, radium was found at two to five times the maximum contaminant levels. In 2017, radon gas, a radioactive byproduct, was discovered at the high school and middle school. Radium was used in the aerospace manufacturing activities at Grumman, including for making luminescent dials and displays. The State is just beginning to consider testing the plume for some of these contaminants. So, far from it being an open and shut case as the defendants would like this Court to believe, there are many findings of mass contamination of known and regulated chemicals about which plaintiffs need discovery, but also just as many instances of once unregulated chemicals which are now regulated that no one has had discovery of including 1,4 Dioxane, and PFAS.

Fourth, Defendant's wishful thinking that there is no exposures to human health is unfounded. "It is certainly among the most significant community exposures that I've seen," said Dr. Kenneth Spaeth, Chief of Occupational and Environmental Medicine at Northwell Health. And School of Medicine. "The combination, the range of different types of contaminants and the toxicological profile of many of them all add up to a very concerning situation."[5] For decades, the contamination, known as the "Grumman Plume" has been allowed to spread unabated. The best estimates of time to clean up the Grumman plume stretch as long as the next 110 years.[6] In 2008, the Navy's investigation in 2008 identified several volatile organic chemicals, including PCE and TCE, in the soil vapor at neighborhood homes.[7] Inside those homes the levels of the solvents were above state limits meant to protect human health. Subsequently, a cancer study, though extremely limited in area and scope, did find that within a one block area in the neighborhood all those diagnosed with cancer were younger than expected. In the 19-block L-shaped area, south of the Bethpage Community Park and east of the Navy owned land, the study found 88 cases of invasive malignant cancers from 1976 to 2009. All were in their mid-20s to early 50s, younger than average for the different cancers.[8] Dr. Howard Freed the former director of environmental health at the New York State Department of Health of the Grumman contamination, "New York DOH has always emphasized scientific uncertainty over what many others see are clear warnings of real risk to the public…[r] routine reassurance cannot be justified in the face of profound scientific ignorance about the health effects of long-term exposure to toxins in our drinking water."[9]

Another source of exposure has been the Bethpage Community Park, which Grumman utilized as a toxic waste dump before donating the land to the Town. While parts of the Park have undergone remediation by the Town of Oyster Bay, the baseball field has been closed for over 20 years. Most recently, in September 2020, Grumman reported to the New York State Department of Environmental Conservation that it found volatile organics in soil at levels as

---

[5] Newsday, Feb. 18, 2020 "In proud Bethpage, years of worry take emotional toll."
[6] NYS Department of Environmental Conservation, 2019 Amended Record of Decision.
[7] See 2018 Record of Decision for OU-4 Former Drum Marshalling Area.
[8] See, Evaluation of Cancer Incidence and Environmental exposures in the Area of the Naval Weapons Industrial Reserve Plant (NWIRP) and Grumman Aerospace Sites, Bethpage, Nassau County, New York, 2013.
[9] Newsday, Feb. 18, 2020 "lone Bethpage cancer study leaves unanswered questions."

5

high as 420 parts per million — more than 40 times the state's target cleanup goals — beneath some areas of the adjacent parking lot near the ballfield and in one spot leading up to the nearby skate park. [10] Generations of Bethpage area residents have used the Park and been exposed to the contaminant there.

Lastly, though the New York State Department of Environmental Conservation has focused on the groundwater plume and the Health Department has only examined impacts from the drinking water, it cannot be disputed that the toxic air emissions from Grumman's facilities provide another route of exposure. For example, Grumman's Toxic Release Inventory Report to the EPA shows that Grumman released over 500,000 pounds of TCE and over 300 pounds of Chromium in 1987 from the facility stacks. It is very likely that the TCE and Chromium emissions were higher in years prior to 1987, when the plants at the site were operating at full capacity. for which plaintiffs have no data. Therefore, it is necessary that plaintiffs get access to all documents relating to Grumman's air contaminant emissions and pollution control technologies for all years of operation.

In prior meet and confers, the Northrop Grumman Defendants have demanded that Plaintiffs prove that documents they seek, which are known to be within these Defendants' possession and control, are not available or not easily obtainable from non-parties. Plaintiffs object to this unreasonable approach, which inverts the applicable discovery rules. While third-party discovery from the above agencies may be helpful in obtaining information contained in public records, it cannot and should not be expected to supplant direct discovery of Defendants' own documents. Furthermore, discovery should not be delayed while the subpoena and Touhy requests are being reviewed, a process that is already extremely difficult and time-consuming due to the pandemic, agency officials working from home and not having access to hard copy files, and various objections to scope and/or procedure posed by the agencies. For the same reason, Plaintiffs cannot be asked to identify what information they are "missing" from a universe of documents which has not been defined or produced. To date, most of the documents produced by the Northrop Grumman defendants have been remedial reports and related materials which they or other parties have submitted to regulatory agencies. Very few are internal documents and other communications that are not part of the public record. However, there is no justification for Defendants to withhold these documents.

It has been more than four years and defendants have not provided any meaningful internal discovery and have placed unreasonable limits on time and type of discovery. The record is now getting clearer, people have been exposed via water, dermal contact, vapor intrusion and inhalation of air emissions. In order to evaluate exposures, defendants need to provide us with its internal documents showing purchase, use and disposal of each of those products that contain these contaminates so our experts can calculate the actual exposure to the community.

For the reasons stated above, the Court should direct the Northrop Grumman Defendants to produce, without any preconditions or further delay, the following:

    a. all documents responsive to the above focused demands;

---

[10] Newsday, Nov. 3, 2020, "Report: More soil contamination found outside Bethpage ballfield".

    b. the custodial files of the four custodians agreed to by the parties;
    c. the search term results agreed to by the parties for all years;
    d. all discovery files produced in the related actions (as listed in Exhibit 3, Doc. 112); and,
    e. documents relating to air emissions, as requested in Exhibit 4.

Without these documents, and disclosures, no depositions can be noticed or conducted.

**Defendants' Position:**

The parties were unable to resolve their differences over what additional information from defendants, if any, plaintiffs need to identify which claims are viable, as discussed during the July 29 conference concerning Northrop Grumman's request for a *Lone Pine* process. (*See* July 29, 2020 Transcript at 32-34, 37-39, and 49-50.) Rather than focus their requests on the fundamental questions of whether any of the plaintiffs were exposed to the chemicals at issue and whether such exposure caused their alleged injuries, plaintiffs have taken the untenable position that the Court denied Northrop Grumman's request for a *Lone Pine* process, rescinded the prior Order bifurcating discovery, and removed all prior limits on discovery into the alleged merits. As a result, Northrop Grumman, requests that the Court issue a formal Order on how discovery is to proceed.

  A. <u>After Four Years, Plaintiffs Have Still Not Identified Any Viable Claims.</u>

A threshold issue in this litigation is whether plaintiffs have been exposed to hazardous substances. New York's regulators, especially the New York State Department of Environmental Conservation (NYSDEC) and the New York Department of Health (NYSDOH), have examined the potential impact that chemicals in the Navy/Grumman groundwater plumes could have on human health and concluded that the alleged exposure pathways plaintiffs described at the July 29 conference are not viable. NYSDEC has not identified even minimal vapor intrusion threats to plaintiffs' residences. Nor have New York's regulators identified health threats to residents from substances deep under the surface, including to those who visited Bethpage Community Park. And the relevant water districts have repeatedly reported that tap water is and has been safe based on State-required testing.[11]

Further, plaintiffs' own test results demonstrated that their properties have not been affected by TCE at all or by any other substance alleged in the pleadings in an amount at or above regulatory standards (which are well below any level that could cause harm). It is well-past time for plaintiffs to come forward with evidence that they were actually in contact with chemicals associated with the Navy/Grumman plumes and exposed in sufficient doses to claim plausibly that such exposure caused their alleged injuries.

  B. <u>Defendants Already Disclosed The Chemicals At Issue.</u>

At the last conference, the Court explained, and defendants agreed, that plaintiffs are entitled to know the relevant (as opposed to all) chemicals in the Navy/Grumman plumes and

---

[11] Examples of such pronouncements are attached in Exhibit 6.

beneath the Bethpage Community Park.[12] Defendants have produced that information, and more.

When plaintiffs first sought broad discovery into the alleged merits, Judge Lindsay properly limited the scope of discovery to class issues and entered an Order bifurcating class and merits discovery.[13] Northrop Grumman then produced information concerning exposure and causation, both of which are relevant to class certification issues.[14] In particular, more than 18 months ago, Northrop Grumman produced nearly 200,000 pages of documents describing: (a) the scope and composition of the plumes (including information regarding the location and movement of the plumes); (b) testing, remediation, and health surveys regarding alleged groundwater and soil contamination in Bethpage; and (c) communications between Northrop Grumman and the public regarding those issues. Since the July 29 conference, Northrop Grumman voluntarily supplemented that production, bringing it forward to October 15, 2020, and produced more than 40,000 additional pages of documents.[15]

In addition, defendant Town of Oyster Bay has produced thousands of pages of documents regarding the Bethpage Community Park, both directly and from its consultant, H2M, including those concerning the key substances plaintiffs allege reside beneath the park (PCBs and Freon refrigerants).

C. New York's Regulators Have Publicly Identified The Site-Related Chemicals.

As part of their ongoing remedial actions, Northrop Grumman and the United States Navy have conducted extensive investigations of the relevant groundwater that have generated test results for more than 5,600 samples of groundwater collected from more than 500 locations.[16] As a result of those investigations, NYSDEC has publicly listed a number of chemicals in the plumes that, while not harming human health, are sufficiently present in frequency and concentration to require further study.[17] NYSDEC has determined, again publicly, that TCE is the main site-related chemical of concern.[18]

Northrop Grumman therefore submits that plaintiffs already know the chemicals at issue, both those in plumes of groundwater hundreds of feet underground and those that may be present under Bethpage Community Park. Information about how and how often plaintiffs were exposed to such chemicals resides exclusively with the plaintiffs. And

---

[12] July 29, 2020 Tr. at 30-32, 49-50.

[13] *See Romano*, No. 16-cv-05760, ECF Nos. 44 (July 23, 2018) and 46 (July 25, 2018).

[14] NG maintains that differences in the ways plaintiffs allege exposure to and causation by different chemicals in different ways are among the reasons class certification will not be appropriate.

[15] NG's production includes communications with government agencies. Contrary to plaintiffs' statement above, NG has not refused to produce such information until plaintiffs fail to obtain it from those agencies.

[16] The U.S. Navy is implementing extensive remedial actions to address the Navy/Grumman plumes under 1995, 2003, 2015, and 2018 Records of Decision, and under Title IV, Section 5009 of the Water Infrastructure Improvements for the Nation Act of 2016 (the "WIIN Act").

[17] *See* Exhibit 7, NYSDEC Amended Record of Decision, dated December 2019, p. 13.

[18] *See* NYSDEC Amended Record of Decision, dated December 2019, p. 8. ("[NYSDEC's] investigation results indicate that the primary contaminant of concern in the groundwater is TCE.").

plaintiffs' experts undoubtedly know what associations between chemicals and injuries are generally accepted in the scientific community. Plaintiffs thus have what they need to demonstrate whether viable claims exist.

D. Plaintiffs Seek Unbounded Discovery Into The Alleged Merits.

Rather than identify any additional information relevant to exposure and causation that they need from defendants, plaintiffs impermissibly seek to boil the proverbial ocean by pursuing broad discovery into the alleged merits, without having even completed reviewing documents defendants already produced. And they renew requests long ago rejected by this Court. For example, Judge Lindsay previously ruled that plaintiffs' requests for discovery regarding substances that were not in the plumes and associated with Northrop Grumman's operations at the Grumman/Navy site were overbroad and improper.[19] Despite that ruling, plaintiffs seek to propound more than 150 search terms that include substances neither alleged nor listed by NYSDEC as among the chemicals to be assessed for possible remediation. Plaintiffs also improperly ask for documents concerning materials (including Iron and Nickel) that are not plausibly linked to plaintiffs' alleged injuries based on prevailing science and generic terms, such as "dust," "leak," "spill," and "Town of Hempstead", which would yield a large number of documents that are irrelevant to this litigation. Plaintiffs sought even broader information from third parties without informing them about relevant Orders limiting the scope of discovery between the parties.[20]

Moreover, just as the parties were trying to narrow their dispute, plaintiffs raised 52 additional requests seeking documents regarding an alleged exposure pathway through the *air*, a pathway plaintiffs did not raise during the July 29 conference or any of the subsequent meet and confers. And for good reason. The chemicals at issue in this litigation are Volatile Organic Compounds ("VOCs"). It is widely accepted that VOCs break down in sunlight. TCE, the main chemical of concern, disintegrates in the air. Plaintiffs here allege exposure not by having worked indoors on Navy fighter jets inhaling TCE fumes, but away from the former Navy/Grumman site in their homes (in many instances decades after production at the site ended). These last minute requests aimed at yet another implausible exposure pathway further illustrate the need for judicial relief. What is more, plaintiffs' belated set of requests seeks the very thing this Court made crystal clear during the July 29 Conference was overbroad: every single chemical Northrop Grumman used at the site. (*See* Ex. 4, Request No. 5 for "[a]ll data and documents describing the production chemicals used by Grumman at the Site.")[21]

---

[19] *Romano*, No. 16-cv-05760, ECF No. 84, Feb. 4, 2019 Hearing Tr. at 39:16-43:21.

[20] Contrary to plaintiffs' representation above, plaintiffs served the third-party subpoenas over Northrop Grumman's objection that plaintiffs failed to tell non-parties that the Court had already bifurcated discovery to focus solely on issues of class certification and that Judge Lindsay already ruled that plaintiffs' list of chemicals was overbroad and plaintiffs' time period should be confined to 1987-2016.

[21] Northrop Grumman denies plaintiffs' unsupported and unsupportable arguments above, none of which answer the simple question of what, if anything, is needed from defendants to identify the relevant chemicals that moved from the legacy Navy/Grumman site to areas where they could come in contact with plaintiffs. We will be prepared to address those arguments at the conference as needed, especially the misrepresentation about what NYSDOH concluded about a TCE detection in raw (not tap) water in 1976. Plaintiffs' allegations into alleged misconduct are both baseless and irrelevant at this stage of the litigation. Consistent with previous

Plaintiffs should not be permitted to re-litigate the very discussion about a *Lone Pine* process the Court conducted months ago. Plaintiffs' citations to the transcript of the July 29 conference contain no denial of Northrop Grumman's request for a *Lone Pine* process and ignore the portions making clear such a process would occur. Plaintiffs have the information about the relevant chemicals and need nothing further to demonstrate whether any plaintiffs were exposed to them and, if so, whether such exposure caused their alleged injuries.

E. Defendants' Requested Next Steps

Northrop Grumman made several attempts to reach a compromise on the reasonable scope of *Lone Pine* discovery, to no avail.[22] In contrast, plaintiffs have yet to demonstrate a need for anything further from the defendants concerning their exposure and causation allegations, and instead assert that there are no limits on discovery and seek an ever-expanding list of materials, all while failing to review discovery they have had for more than 18 months. Accordingly, Northrop Grumman respectfully requests that the Court reiterate its direction at the last conference that there will be a *Lone Pine* process and set a reasonable schedule for plaintiffs to drop claimants who do not have viable claims, as they have pledged to do, and to provide expert reports on exposure and causation for any remaining plaintiffs.[23]

Finally, Northrop Grumman respectfully requests that plaintiffs' counsel provide whatever factual support they have to support the exposure and causation allegations that plaintiffs have not already produced to defendants.[24] Plaintiffs' counsel has refused to do this, or even to update the Court-Ordered chart concerning plaintiffs' claims, which plaintiffs' counsel admits is incomplete. (*Romano*, No. 16-cv-05760, ECF Nos. 105, 105-1.)

Respectfully submitted,

---

Orders of this Court, in the unlikely event claims survive the *Lone Pine* process and class certification, the Court will hold a status conference concerning discovery into issues beyond exposure and causation plaintiffs seek here. (*See Romano*, No. 16-cv-05760, Oct. 21, 2020 Order regarding scheduling Order at ECF Nos. 56, 56-1 (requiring a revised case management plan, if needed, within 21 days of the Court's decision on class certification).)

[22] Regrettably, plaintiffs' statements above about the meet and confer effort are false; we are happy to address them at the conference as needed. But we cannot leave unanswered the suggestion that Northrop Grumman recently raised the parties' task to reach agreement on discovery needed for a *Lone Pine* process, as this Court directed. Defense counsel raised that limitation on discovery, as well as the Court's prior Orders limiting discovery, at the beginning and throughout the meet and confer process. And plaintiffs' statement above about a "tentative agreement" concerning documents produced in other cases is also not true, and belied by the correspondence plaintiffs attach.

[23] *See* July 29, 2020 Tr. at 21:21–22:18.

[24] Putative class representatives have already admitted in response to fact sheets approved by Judge Lindsay during class discovery that they have no such support and that no medical practitioner indicated that their alleged injuries were caused by defendants or the exposure alleged. (*See Romano*, No. 16-cv-05760, ECF No. 86-2, Excerpts from Plaintiffs' Fact Sheets at PL-ROM000007, 14, 83, 90, 383, 391, 439, 446, 511, 518.) Instead, they have been told by counsel that "volatile chemicals were found" on their properties. (*See, e.g.*, *id.* at PL-ROM000007, 83.)

| | |
|---|---|
| NAPOLI SHKOLNIK PLLC | MORRISON & FOERSTER LLP |
| By: ___/s/ Paul Napoli_____<br>    Paul Napoli<br>    Lilia Factor | By: __/s/ Grant Esposito_____<br>    Grant J. Esposito<br>    Katie L. Viggiani |
| 360 Lexington Avenue, 11th Floor<br>New York, New York 10017<br>Telephone: (212) 397-1000<br>Email: pnapoli@nsprlaw.com;<br>lfactor@napolilaw.com; | 250 West 55th Street<br>New York, New York 10019<br>Telephone: (212) 468-8000<br>Facsimile: (212) 468-7900<br>Email: gesposito@mofo.com;<br>kviggiani@mofo.com |
| *Counsel for Plaintiffs* | *Attorneys for Defendants Northrop Grumman Corporation and Northrop Grumman Systems Corporation* |
| | MILBER MAKRIS PLOUSADIS & SEIDEN, LLP |
| | By: ___/s/ Peter Tamigi_____<br>    Peter F. Tamigi |
| | 1000 Woodbury Road, Suite 402<br>Woodbury, New York 11797<br>Telephone: (516) 715-4000<br>Email: ptamigi@milbermakris.com |
| | *Attorneys for Defendant Town of Oyster Bay* |