UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

*IN RE:* *Romano v. Northrop Grumman Corp. et al.*, No. 16-cv-5760
*Ackerman v. Northrop Grumman Corp.*, No. 18-cv-4397
*Ackerson v. Northrop Grumman Corp.*, No. 19-cv-942
*Ball v. Northrop Grumman Corp.*, No. 19-cv-4381
*Cammarata v. Northrop Grumman Corp.*, No. 20-cv-0511
*Cornett v. Northrop Grumman Corporation*, No. 18-cv-06453
*Auer v. Northrop Grumman Corporation*, No. 21-cv-415

---

## JOINT STATUS REPORT PURSUANT TO MARCH 6, 2019 ORDER

Dear Magistrate Judge Lindsay:

The parties jointly submit the following status report in accordance with the Court's March 6, 2019 Order, which stayed Phase I discovery regarding class certification issues pending resolution of Northrop Grumman's request for a *Lone Pine* order. (Order regarding ECF No. 87, entered Mar. 6, 2019.)

At a status conference on December 3, 2020, Judge Brown declined to enter a *Lone Pine* order, directed the parties to continue Phase I discovery and produce certain documents, and referred all subsequent discovery disputes to your Honor. The Court further set a date of September 1, 2021 for the commencement of briefs for a motion for class action certification. (Dec. 4, 2020 Order (attached as Exhibit A).) Since that conference, the parties have continued to meet and confer and exchange correspondence regarding class certification discovery issues. Below is a summary of the Phase I productions taking place and the remaining disputes at this time.

The parties jointly request a conference with your Honor to resolve these disputes and expedite remaining disclosures.

I. **ONGOING PRODUCTIONS**

    A. **Plaintiffs' Production:**

        1. Plaintiffs will produce an updated and complete version of the Plaintiff Injury Chart submitted on April 1, 2020[1] on or before April 30, 2021.

        2. Plaintiffs will provide authorizations from any additional medical providers seen by the currently proposed class representatives during the

---

[1] *See* March 13, 2020 Order (ECF No. 102.)

        period since the production of the Plaintiff Fact Sheets and authorizations for these parties, on or before April 30, 2021.

    **B.**    <u>**Northrop Grumman's Production**</u>

        1.    The parties are negotiating terms to be searched across a group of four agreed upon custodians (Ed Hannon, John Cofman, Kent Smith, and Mike Wolfert) as part of Phase I. Northrop Grumman is completing its review of documents that hit on undisputed search terms and will produce responsive, non-privileged documents that are relevant to Phase I on or before April 30, 2021.

        2.    Northrop Grumman is reviewing documents produced in the Travelers Indemnity cases that have not already been produced in this litigation and will produce any non-privileged documents that are relevant to Phase I on or before April 30, 2021.

**II.**    **DISPUTED DISCOVERY ITEMS**

    **A.**    <u>**General Scope of Northrop Grumman's Discovery**</u>

<u>Plaintiffs' Position</u>

Defendants have failed to provide the discovery that Judge Brown ordered in December. See Transcript of December 3, 2020 Conference, attached hereto as Exhibit B, pp. 23-31. Judge Brown's express directive was part of his clearly stated policy of comprehensive and open discovery production[2].

In the parties' joint submission to the Court ahead of a conference with Judge Brown, Defendants raised these and numerous other objections. A copy of the Joint Submission dated December 1, 2020, together with the Exhibits 1-7 thereto, is annexed hereto as Exhibit C (ECF 114). At the December 3, 2020 conference, following a discussion on these topics, Judge Brown clearly ordered all of these documents to be produced. The Court's Dec. 4, 2020 Order, issued immediately after the conference states:

---

[2] "THE COURT: No one's saying to me that exceptional economic burdens, you know, or that there's privileges. I'm not hearing any of that. You know. And also, frankly, I'd rather leave this to Judge Lindsay who has much more of a handle on it, but I'm going to say everything I just heard about should get turned over." See Exhibit B, Transcript of Dec. 3, 2020 Hearing, p. 30, lines 9-14.

THE COURT: I order everybody to turn everything over. See Exhibit B, Transcript of Dec. 3, 2020 Hearing, pp. 30-31, line 26.

    2. Before any additional impasses arise, however, counsel has been directed to produce millions of pages of documents in various categories, as described in the conference, as well as individual discovery information relating to plaintiffs. Counsel is reminded that the rules do not permit the withholding of any material subject to production based on a perceived failure of the opposing party, or insisting on a quid pro quo for such production. In this regard, counsel is directed to review and abide by the appropriate sections of the FRCP and the local rules which require the efficient and speedy resolution of disputes, cooperation between and courtesy among counsel in discovery, the reasonable interpretation of discovery requests and good faith meet and confer requirements.

Accordingly, the Court should order Northrop Grumman to produce the following categories of documents:

1. All documents that hit on the search terms listed in Exhibit F (including the disputed terms at p. 4)) across all of the above custodial files. The documents should be produced without limitations as to on-site or off-site operations, temporal restrictions, or any other limitations discussed below. Defendants have advised that a test run of all terms yielded more than 215,000 documents and have since continued to suggest numerous limitations. However, as noted above, Judge Brown rejected Defendants' position and ordered comprehensive disclosures.

2. All documents responsive to Plaintiff's Second Set of Document Demands, dated November 20, 2020. The demands seek documents relating to Defendant's air emissions from their facilities, an important route of toxic exposure for Plaintiffs. Defendants have, so far, failed to produce any responsive documents.

3. Litigation documents from Grumman's insurance cases with Travelers. These are within the scope of documents demanded by Plaintiffs and approved for disclosure by Judge Brown. Furthermore, as discussed below, they are directly relevant to the claims and defenses in this action.

Focusing exclusively on certain rulings made over two years ago by the Magistrate Judge with respect to Plaintiffs' initial document demands[3], Defendants continue to raise the same objections, ignoring both the letter and spirit of the Court's new direction, as clearly stated in its December 4, 2020 Order (Exhibit A and Note 1 *supra* and Exhibit B – December 3, 2020 Status Conference Transcript).

For example, even though in prior correspondence and numerous meet and confers, Defendants agreed to waive any limitations with respect "on-site" operations, they are reviving their objections here. Also, even though the parties have been engaging in Court- ordered

---

[3] Plaintiffs respectfully suggest that certain limitations on discovery imposed by the Magistrate on February 4, 2019 have since been specifically waived by Defendants themselves and also superseded by subsequent Orders of the Court.

discovery since the lifting of the stay on July 29, 2020, and Defendants themselves are demanding that Plaintiffs produce additional documents, Defendants now claim that Phase I discovery is complete. In this, they incorrectly cite Plaintiffs' March 6, 2019 letter to the Court (ECF 87). In the letter, Plaintiffs stated: "In view of the Court's decision to suspend certain discovery deadlines[4], Phase I discovery has not been completed." [emphasis added] At the time, Plaintiffs requested that discovery be allowed to continue. However, on the same date, this Court ordered a stay of discovery, pending resolution of Defendants' request for a Lone Pine Order[5]. This stay was lifted by Order of Judge Brown, dated July 29, 2020 (ECF. 109).

In their arguments below, Defendants repeatedly mischaracterize Plaintiffs' position and the discovery negotiations. The actual statements and correspondence of the parties were presented to Judge Brown in their joint letter preceding the December 3, 2020 conference and are attached herein as Exhibit C(5) hereto (ECF 114-5). In subsequent correspondence following the conference with Judge Brown, Plaintiffs again attempted to resolve many of the discovery disputes presented below, but to no avail. See Jan. 11, 2021 Ltr. from Plaintiffs' to Northrop Grumman's counsel, attached as Exhibit D. Defendants' references to moot initial discovery deadlines and other spurious objections, addressed in greater detail below, serve two goals, delay and impeding Plaintiffs from getting the information they need to assess their exposure to the contaminants, an essential part of their case against Defendants. The Magistrate is respectfully requested to follow Judge Brown's lead and order Northrop Grumman to produce the documents it has in its possession, as described below.

Northrop Grumman's Position

Northrop Grumman complied with Judge Brown's Order by producing more than two million pages of documents to Plaintiffs on December 15, 2020.[6] Plaintiffs have not yet produced what Judge Brown ordered them to produce to Northrop Grumman.

---

[4] Plaintiffs were referring to the Court's request, during the February 4, 2019 conference relating to motions to compel, that the parties should submit a proposed new discovery schedule. However, shortly thereafter, on March 4, 2019, before any new schedule was set, the Northrop Grumman Defendants filed their letter request for a Lone Pine Order, leading to the stay of discovery. See *infra*.

[5] See ECF 87 (Plaintiff's letter) and Order dated March 6, 2019, stating ""Moreover, upon consideration of the issue of waiting for a decision on the Lone Pine order, it may have a substantial impact on the scope and order of discovery. Accordingly, all discovery is stayed pending a decision."

[6] That production included documents that Northrop Grumman had previously produced in three cases involving similar issues and that Northrop Grumman agreed to produce: (i) *Town of Oyster Bay v. Northrop Grumman,* et al., 2:05-cv-1945 (E.D.N.Y.); (ii) *Town of Hempstead v. United States*, et al., 2:16-cv-03652 (E.D.N.Y.); and (iii) *Bethpage Water District v. Northrop Grumman Corporation,* et al.*,* 2:13-cv-06362 (E.D.N.Y.). (*See* Dec. 3, 2020 Hrg. Tr. at 25:11–21.)

Since the December 3, 2020 conference, the parties met and conferred on the remaining Phase I issues, including potential search terms and a second set of document requests that were not discussed during the conference with Judge Brown. The impasse involves the standard approach of applying limiters to search terms that are overbroad. For instance, Northrop Grumman proposed adding the limiter "w/ 10 Bethpage" to avoid the cost and burden of reviewing false positives. Plaintiffs recognized the need for limiters and suggested using "AND Bethpage" instead. Despite being advised by its vendor that Plaintiffs' proposed limiter would still generate thousands of false positives, Northrop Grumman agreed, expecting that would obviate the need for judicial intervention, only to have Plaintiffs back away from their own proposal and object to using limiters entirely. This history is more fully set forth below. Northrop Grumman respectfully requests the Court order the compromise to which the parties already agreed.

Finally, Plaintiffs' suggestion that Judge Brown revisited and overruled prior Phase I discovery Orders is belied by the transcript of that hearing. As that transcript reflects, counsel for Northrop Grumman advised Judge Brown of Your Honor's prior rulings concerning the scope of Phase I discovery. (Dec. 3, 2020 Hrg. Tr. at 16:4–16, 34:23–36:3.) Plaintiffs did not ask the Court to overrule those prior rulings, and the Court did not do so. Instead, the Court directed both sides to produce certain materials, instructed the parties to discuss any remaining Phase I issues, and referred future disputes to Your Honor. (*Id.* at 32:17–33:13.)

As Your Honor will recall, much time and energy was expended on the scope of Phase I discovery prior to the stay. Over the course of three hearings, dozens of letters, and formal motions to compel, the Court resolved myriad disputes over document requests, interrogatories, fact sheets, and requests for admission. The Court issued final rulings during a hearing on February 4, 2019, which Plaintiffs never challenged. Indeed, in March 2019, Plaintiffs certified that Northrop Grumman's document production concerning Phase I issues was complete. (ECF No. 87 at 3 (stating that production of documents was "completed, except by TOB.").) Northrop Grumman reminded Plaintiffs of this history and Your Honor's Phase I discovery Orders during recent meet-and-confers, to which Plaintiffs responded that the Court's prior rulings are "irrelevant." (Jan. 19, 2021 Letter from K. Viggiani to L. Factor at 2 (attached as Exhibit E).)

Plaintiffs' argument that Northrop Grumman somehow could or did nullify Your Honor's prior rulings is unsupported and false. To try and resolve the dispute over search terms, Northrop Grumman offered to search electronic files, if any, dated prior to 1987. While Plaintiffs rejected that offer, Northrop Grumman is still willing to search the agreed upon custodial files for documents prior to 1987. The end date for Phase I discovery remains September 2016, when the Romano complaint was filed. (Feb. 4, 2019 Hrg. Tr. at 27:5–10 (THE COURT: "[W]e're starting with 1987 as I've ruled through September 2016.").) Furthermore, this Court's ruling that Phase I discovery is limited to offsite issues also remains in effect. (*Id.* at 29:10–15 (MS. FACTOR: "They won't provide any information about onsite operations . . ." THE COURT: "None of that is relevant at the moment. All of that is premature. You're doing class discovery. Their objections are appropriate.").) No member of the alleged class claims injury tied to exposure at the legacy Navy/Grumman site. Phase I discovery has been and remains properly limited to whether members of the alleged classes were affected by chemicals that migrated offsite. Plaintiffs long ago conceded that Phase I discovery does not include onsite issues. (Plaintiffs' March 12, 2019

Letter , ECF No. 88, at 2 n.4 (noting that "Grumman has objected to the production of documents relating to contamination at the Site and documents dating prior to 1987 and the Magistrate has agreed that such production is premature").)

In sum, while Plaintiffs raise a host of purported issues in this status report, only three need to be resolved at this time. First, as the Court will recall, the parties did not previously negotiate search terms and custodians as part of Phase I document production. That exercise, which is all that remains to complete Phase I document discovery, is going on now, subject to Your Honor's ruling on the parties' disputes over the search terms. Second, Plaintiffs still have not provided a complete and accurate chart containing information on Plaintiffs' claims that Judge Brown first ordered them to submit almost a year ago[7]—nor have they produced any underlying medical records or any other information that they used to prepare the chart, which are relevant to Phase I. Third, Plaintiffs refuse to discuss new dates for key elements of the Phase I schedule to which they previously agreed and this Court ordered: the completion of Phase I document production, depositions of the putative class representatives, and a date by which plaintiffs identify their class certification experts and their expected opinions. Northrop Grumman has no burdens on class certification, and thus needs to know the experts Plaintiffs intend to offer and a summary of their expected opinions so that it can line up its rebuttal experts.[8] All other issues relate to Plaintiffs' requests for discovery that Your Honor has already ruled are premature and beyond the scope of Phase I. There is no basis to revisit those rulings until we reach Phase II, as this Court already has ordered.

**B.** **Disputes Regarding Specific Search Terms**

A list of the search terms agreed upon and those that are in dispute is attached as Exhibit F. Below are the parties' positions regarding terms that remain in dispute.

*1.* *Use of "Bethpage" as Limiter*

<u>Plaintiffs' Position</u>

Plaintiffs object to the use of this limiter. It is undisputed that Grumman's contaminants spread beyond the geographic confines of the hamlet of Bethpage. This is borne out by the numerous environmental reports and litigation documents already produced by Defendants. The groundwater plume is at least 4.3 miles long and over 2 miles wide and continuing to spread, covering many communities beyond the hamlet of Bethpage. The pollution has required treatment

---

[7] See ECF No. 105, 105-1.

[8] See *Natixis Fin. Prod. LLC v. Bank of Am., N.A.*, No. 10-cv-03656, 2016 WL 7165981, at *4 (S.D.N.Y. Dec. 7, 2016) ("As the party with the burden of proof, [Plaintiff] would in the usual course be required to disclose its expert testimony on those claims.") (citing Manual for Complex Litig. (4th) § 11.481, Fed R. Civ. P. 26, Advisory Committee Notes, 1993 Amendment, subdiv. (a)(2) ("[I]n most cases the party with the burden of proof on an issue should disclose its expert testimony on that issue before other parties are required to make their disclosures with respect to that issue.")).

at numerous wells that provide drinking water for Bethpage, Plainedge, South Farmingdale, North Massapequa and parts of Levittown, Seaford, Wantagh and Massapequa Park.[9] We now understand that the air pollutants produced by Grumman's plants spread out in all directions from the site, impacting an even wider area. All of these routes of exposure are expressly alleged in the above referenced actions, including the class action complaint. Plaintiffs intend to amend their class definitions to eliminate any uncertainty about these issues and the proposed class.

Contrary to Defendants' statements below, Plaintiffs never agreed to use the "Bethpage" term limiter across the board. As stated in Plaintiffs' January 11, 2021 letter to Defendants: "You originally proposed running our search terms, but for ten of them (plus the well numbers) you asked to add the limitation "w/10 Bethpage" (K. Viggiani email dated 11/18/20). We objected to the limitation on the wells, but said that it would be okay for the remaining 10 terms. Subsequently, our IT team clarified that this would exclude any hits that do not have the word "Bethpage" in close proximity, so we flagged this as a problem in our subsequent correspondence. In your latest proposal (Jan. 6th letter), you suggest adding the limitation "AND Bethpage" to 41 terms. This would mean that any email or document that does not have the word "Bethpage" in it would be excluded, even if it relates to the Site and/or Site-related contamination and even if it has to do with the impacts of toxins on the adjacent residential communities in the towns of Hempstead and Oyster Bay. This proposal is not acceptable and Defendants have proposed no other means to address their concern about "false hits". While we agree that some effort should be made to avoid hits for unrelated Grumman sites, on balance, we need to err on the side of over-inclusiveness. Once the production of terms without limiters is made, either party can easily narrow the search by applying any geographic or contextual limiters it chooses using standard document review software. However, defendants should not have sole discretion on this issue."[10]

The class action refers broadly to current and former residents and/or property owners of/in "the Bethpage area of Nassau County" (Romano SAC ¶1) and goes on to describe the wide-ranging pollution caused by the Northrop Grumman Defendants' dumping activities. Defendants may not limit or shape the classes to their liking. Plaintiffs are entitled to all documents showing the full extent of site-related contamination.

Northrop Grumman's Position

Northrop Grumman proposed adding to certain overbroad search terms the limiter "w/ 10 Bethpage" to avoid the cost and burden of reviewing false positives. During a meet and confer on December 16, 2020, Plaintiffs suggested instead that Northrop Grumman use "AND Bethpage" as a limiter. Northrop Grumman was advised by its vendor that Plaintiffs' proposed limiter would still generate thousands of false positives. Nevertheless, Northrop Grumman agreed to Plaintiffs' proposal in order to obviate the need for judicial intervention. (Jan. 19, 2021 Letter from K. Viggiani to L. Factor at 1–3 (attached as Exhibit E.) Later, Plaintiffs reneged and took the position

---

[9] *See, e.g.*, NYS Department of Environmental Conservation, 2019 Amended Record of Decision; Newsday, Feb. 18, 2020, "The Grumman Plume, Decades of Deceit"; Health Consultation, NYS Department of Health, May 23, 2019.

[10] For earlier correspondence regarding search terms, see ECF 114-5.

that they wanted to capture information that relates to areas other than Bethpage. Plaintiffs admit that information beyond Bethpage is not relevant to the proposed classes in the operative complaint, which is all that is relevant during Phase I. Despite Plaintiffs' confusing reference above to the "Bethpage area of Nassau County," the Second Amended Complaint's proposed classes consist solely of "residents of Bethpage" or "owners of real property in Bethpage." (Second. Am. Compl. ¶ 253(a)–(d) (ECF No. 34).)

Plaintiffs, however, now state that they plan to amend their class definitions to include additional geographical areas. But the time to amend the *Romano* complaint expired years ago. (*See* Initial Conference Minute Entry, ECF No. 46 (setting Oct. 10, 2018 amendment deadline).) When Judge Brown asked Plaintiffs' counsel to choose the date by which their motion for class certification would be due, they did not suggest a need, much less seek leave, to file what would be a third amended complaint.

Furthermore, adding "AND Bethpage" to certain broad terms would reduce the number of false positives, particularly as to terms like "FS," "IRM," and "ROD," which yield more than 40,000 hits each and which are abbreviations of other terms Northrop Grumman is agreeing to search, including "Feasibility Study," "Interim Remedial Measure," and "Record of Decision." The false positives generated by removing all limiters include documents regarding unrelated superfund sites that have no bearing on Plaintiffs' proposed classes, like the Westinghouse Electric Corporation site in Sunnyvale, California, where Northrop Grumman is performing CERCLA cleanup of a prior owner's soil and groundwater contamination.

2. *Bethpage Community Park*

Plaintiffs' Position

Bethpage Community Park was utilized by Grumman as a toxic waste dump before it donated the land to the Town. While parts of the Park have undergone remediation by the Town of Oyster Bay, the baseball field has been closed for over 20 years. Most recently, in September 2020, Grumman reported to the New York State Department of Environmental Conservation that it found volatile organics in soil at levels as high as 420 parts per million — more than 40 times the state's target cleanup goals — beneath some areas of the adjacent parking lot near the ballfield and in one spot leading up to the nearby skate park.[11] Generations of Bethpage area residents have used the Park and been exposed to the contaminants there. The above facts are alleged throughout the class action complaint and in each of the individual claims in all seven actions. The class, as currently defined, includes a subclass of "all residents of Bethpage who have been exposed to the toxic contaminants and industrial solvents […] discharged by Defendants at the Site to establish medical monitoring as "reasonably anticipated' consequential damages resulting from their exposure to the aforementioned toxins (the "Bodily Injury Class"). See *Romano* Second Amended Complaint ¶253(a). Defendants' argument that visitors and regular users of the Community Park,

---

[11] Newsday, Nov. 3, 2020, "Report: More soil contamination found outside Bethpage ballfield". https://www.newsday.com/search#filter=stories&query=bethpage%20community%20park%20ballfield.

the toxic site of Grumman's Settling Ponds for waste disposal (*Id*. ¶¶ 59-67) were not exposed to the contamination is a dubious fact-based defense, but certainly not a reason to prohibit Plaintiffs' inquiry into the basis for their expressly alleged claims.

As late as December 18, 2020, Defendants did not object to this search term on the basis that it is not relevant to Part I discovery, only that it was producing some extra hits. Defendants' revived attempts to exclude documents relating to the Park, because, for example, the Town has produced other documents or there are publicly available reports, fly in the face of their basic discovery obligations to produce all responsive documents in their possession and control. The fact that another party to the litigation has produced responsive documents does not excuse the Northrop Grumman Defendants from producing the documents in their possession. Moreover, it is undisputed that the term "Bethpage Community Park" will only refer to this former part of the Grumman facility in Bethpage and no other. Thus, there can be no objection based on "false hits".

To put it simply, Plaintiffs claim that community residents were exposed to Grumman's pollutants in their homes, in their neighborhoods, and in the Park. All of them are part of the "class". The Park, the site of Grumman's sludge drying beds and other toxic waste disposal, was found to have heavily contaminated soil and groundwater and has necessitated multiple and ongoing cleanup activities for the past twenty years.

In conclusion, there is no basis for excluding Bethpage Community Park and documents relating to Defendants' disposal of waste there, as well as any subsequent remedial activity, from Northrop Grumman's document production.

Northrop Grumman's Position

Visitors to the Park were not, as Plaintiffs assert, exposed to chemicals 40 feet underground.[12] As the New York State Department of Environmental Conservation has concluded, including in responses to public comments by Plaintiffs' Counsel to the December 2019 Amended Record of Decision for the Navy-Grumman Facility, no data suggests that people who worked in the Park let alone visitors to the Park were exposed to contaminants. (December 2019 AROD, Responsiveness Summary at A-40.)

As for the discovery issue, Northrop Grumman objects to running the search term "Bethpage Community Park" on both relevance and proportionality grounds. First, as to relevance, Plaintiffs propose classes involving those who currently or formerly reside in Bethpage.[13] But no class representative resides above the Park. The Second Amended Complaint also refers to a "medical monitoring class," but Plaintiffs have not defined its purported scope to include occasional visitors to the Park, and medical monitoring is not an independent cause of action in New York. *See Caronia v. Philip Morris USA, Inc.*, 22 N.Y.3d 439, 448 (2013). The

---

[12] Plaintiffs' argument erroneously relies on remediation sampling data described in the very article that Plaintiffs cite for a limited area "about 40 feet below [a] parking lot."

[13] *See* SAC, ECF No. 34 ¶ 253.

Second Amended Complaint does not allege a *class* of persons injured based on their sporadic visits to the Park. As a result, discovery into the Park is reserved for Phase II.

Next, as to proportionality, Plaintiffs concede that information regarding the Park is available from other sources, including co-defendant the Town of Oyster Bay, which has now completed its document production. Further, documents regarding the Park already will be captured by many of Plaintiffs' other search terms. Specifically, in an attempt to avoid discovery disputes while reserving all rights, Northrop Grumman has agreed to search more than sixty chemicals, far more than what is relevant to Phase I or even Phase II,[14] without limitation to where in Bethpage those chemicals might be located. Adding the phrase "Bethpage Community Park" as a standalone search term yields more than 50,000 additional hits to review. Plaintiffs' request for information not relevant to Phase I that will only add undue burden and expense should be denied.[15]

### C. Travelers v. Grumman Cases

Plaintiffs' Position

In 2012, Travelers Indemnity Company and other parties sued Northrop Grumman in the District Court for the Southern District of New York to defend their decision to decline coverage for the environmental claims related to the contamination at and migrating from the Grumman site. An additional action was filed in 2016. There was also an appeal and a decision of the Second Circuit Court of Appeals.[16] The proceedings in these actions generally dealt with Grumman's polluting activities, what it knew about the contamination, when it knew it, and when it should have provided notice to its insurers for various claims made against Grumman, including the claims made in this action. In addition, a number of witnesses and experts opined that there were drum failures, tank failures, spills and other "accidents" at the facilities, releasing contaminants, including TCE and hexavalent chromium, into the community. As such, these litigation documents are directly relevant to the claims and defenses in these actions and should be disclosed in their entirety. However, many of the documents contained in these dockets are sealed or otherwise unavailable or redacted. See Exhibit G – List of Unavailable Documents. Plaintiffs have repeatedly asked for the production of these documents (See Ex. D, Plaintiffs' ltr. dated Jan. 11, 2021). Since they were already exchanged in prior litigation, the burden of production is minimal.

---

[14] The Court already ruled that Plaintiffs could not obtain discovery on chemicals not listed in the Complaint unless they demonstrated a "good faith basis" for such requests (Feb. 4, 2019 Hrg. Tr. at 59:17–60:1) and Plaintiffs' counsel later represented to the Court that only about "a dozen" chemicals are relevant to the Complaint. (Dec. 3, 2020 Hrg. Tr. at 10:21.)

[15] Plaintiffs have not offered to cover any of the costs their overly burdensome requests have imposed, contrary to what Rule 26(c)(1)(B) envisions.

[16] *Travelers Indemnity Company et al. v. Northrop Grumman Corporation et al.*, S.D.N.Y. 1:12-cv-3040-KBF and *The Travelers Indemnity Company et al. v. Northrop Grumman Corporation et al.*, S.D.N.Y. 1:16-cv-8778-LGS and the appeal to the Second Circuit, *Travelers Indemnity Company, et al. v. Northrop Grumman Corporation, et al.,* No. 15-3117-cv.

Furthermore, Defendants should not be permitted to unilaterally cull what they consider to be relevant.

Plaintiffs further note that this dispute has already been settled by Judge Brown. In their joint submission to the Court dated August 5, 2020, the parties identified the Travelers litigation as related (ECF 112, Ex. 3). Plaintiffs' referred to this list of cases in their Joint Submission for December 3, 2020 Conference (ECF. 114, p. 7), requesting the discovery files. At the December 3, 2020 Conference, Plaintiffs again requested the files. See Transcript, p. 13, at lines 4-8. At the end of the discussion, Judge Brown ruled that "everything I just heard about should get turned over," a clear directive which overruled Defendants' objections.

Northrop Grumman's Position

Contrary to Plaintiffs' argument above, during the December 4, 2020 hearing before Judge Brown, the parties discussed and the Court ordered production of documents Northrop Grumman produced in three cases, not those produced in the insurance litigation. (*See* Dec. 3, 2020 Hrg. Tr. at 25:14–20 (referring to three other cases, but not the insurance cases).) Moreover, Plaintiffs' request for all documents that Northrop Grumman produced in the two insurance cases continues to ignore that the insurance litigation involves issues not relevant here, including notice issues as to claims beyond Bethpage and matters that are beyond the scope of class discovery. First, those cases include disputes over insurance coverage for government-owned contractor-operated sites located elsewhere in New York State, not just Bethpage. Second, regarding the Bethpage Site, the insurance cases concern interpretations of the parties' obligations under insurance contracts, including when the policies required notice to the insurers for coverage of costs related to potential *onsite* groundwater contamination.[17] Leaving aside that notice to insurers is not at issue in this litigation, the Court already has ruled that onsite issues will be covered during Phase II discovery. (Feb. 4, 2019 Hrg. Tr. at 29:10–15.) Plaintiffs previously acknowledged in submissions to the Court that Phase I discovery does not include onsite issues. (Plaintiffs' March 12, 2019 Letter , ECF No. 88, at 2 n.4 (noting that "Grumman has objected to the production of documents relating to contamination at the Site and documents dating prior to 1987 and the Magistrate has agreed that such production is premature"). Plaintiffs' request is nothing more than a belated and improper request to revisit Your Honor's prior ruling concerning the scope of Phase I discovery. The time to challenge that ruling has long since passed, and the issue of discovery into onsite issues can be addressed during Phase II.

Thus, the documents produced in the insurance cases need to be reviewed for relevance to this litigation and to Phase I, which Northrop Grumman is already in the process of doing. It is

---

[17] While Plaintiffs' argument about chromium is a Phase II issue, it misrepresents the publicly available facts about that issue. The insurance litigation involves TCE, not hexavalent chromium. In 1949, Grumman built a state of the art treatment facility for hexavalent chromium in wastewater to comply with all regulations at all times. The materials to which Plaintiffs refer about spills or accidents do not concern hexavalent chromium.

unclear what dispute could remain on this point. Producing parties "unilaterally cull" for relevance all the time, including Plaintiffs here. That is how discovery works.

Relatedly, court documents, expert reports, and testimony provided in the insurance cases are beyond the scope of Phase I, as the Court already ruled in denying Plaintiffs' motion to compel deposition transcripts from other cases during Phase I. (Feb. 4, 2019 Hrg. Tr., ECF No. 84 at 69:1–3.)

### D. Plaintiffs Second Set of Document Demands

Plaintiffs' Position

On November 24, 2020 Plaintiffs served a Second Set of Document Demands on the Grumman Defendants. A copy of the Demands is attached as Exhibit C(4) hereto. The demands seek information about pollutants that were released from the Grumman facilities in the form of air emissions, including the sources and volumes of the emissions, permit information, and mitigation systems, if any. Defendants responded on January 11, 2021 with written responses and objections, but have not produced any responsive documents to date, nor have they provided a date by which they intend to do so.

Among the numerous formulaic objections raised by Defendants to each of the document demands is that it is "premature" because it "seeks information that is beyond Phase I class certification discovery and is not implicated by Plaintiffs' definitions of the purported classes". This approach ignores the fact that, during the over 50 years of operations at the Grumman site (from at least the 1940s to the 1990s), defendants' industrial processes discharged toxic substances, including TCE, PCE and hexavalent chromium, into the air. These pollutants spread across the nearby residential areas exposing putative class plaintiffs. Plaintiffs are entitled to further discovery and documents from defendants relating to this and other routes of exposure, which are expressly pleaded in their complaints. See, *e.g. Romano* SAC ¶¶87, 106-108, 115, 179. Despite this, Defendants' document productions to date have focused solely on soil and water contamination. The information regarding Grumman's air emissions, their sources, volume, and, mitigation measures, if any, is essential for Plaintiffs to properly present their claims. It goes to the basic questions of exposure of the class members and the class representatives.

Defendants also raise the objection that Demands No. 1, 2, 3, 6, 7, 8, 9, 10, 11, 12, 13, 14, 18, 19, 35, 36, 37, 38, 39, 40, 41, 45, 46, 47, 48, 49, 50 do not include a temporal limit. However, the definitions clearly state the dates when the Grumman and the NWIRP facilities were in operation, and, presumably, emitting air pollutants. These are the years that Plaintiffs living in the vicinity of the plants would have been breathing in these toxins. Defendants should be required to produce all responsive documents relating to the emissions in their possession, with the understanding that the earlier decades may yield sparse records.

Lastly, in their response to every Demand, Defendants state: "Further, Northrop Grumman is making a supplemental production based on running search terms across agreed-upon custodians." While Plaintiffs eagerly await such a production, it should be clear that it does not and should not obviate a comprehensive search and production of specific documents responsive

to the specific demands.  Search terms are a tool, but not a replacement for a good faith effort to produce the requested information about air emissions, regardless of whether they may be found in the four custodial files currently agreed upon and regardless of whether there is a "hit" on any particular search term.

Defendants' objection that the deadline for seeking Phase I discovery is past is incorrect. As previewed in the introduction, the initially set discovery deadlines passed and, acknowledging this, the Court ordered the parties to submit a new proposed schedule.  See Feb. 4, 2019 Hearing Transcript (pp. 70-71).  However, the Northrop Grumman Defendants curtailed that process by filing their *Lone Pine* request, which led to the stay of discovery.

Now, Defendants seek to prevent Plaintiffs from obtaining information about an important route of toxic exposure, which is part of their case by: (1) failing to provide actual documents relating to the air emissions or even a date by which they will produce such documents; (2) issuing objections that essentially preclude any meaningful production; (3) claiming that Plaintiffs cannot raise this discovery dispute with the Court, even though the current submission is intended to present the existing discovery disputes and obtain rulings, so that discovery can be completed in time for the class certification motion.

In the interests of efficiency and to avoid motions to compel and/or for protective orders, Plaintiffs request that the Court issue a ruling with respect to the above objections and set a deadline for the production of the requested documents relating to air emission.  Plaintiffs reserve the right to raise more specific disputes when they actually receive Defendants' document production responsive to the Second Set of Document Demands.

Northrop Grumman's Position

This dispute reflects another belated attempt to expand the scope of discovery beyond Plaintiffs' allegations and pleaded classes.  The class definitions in the Second Amended Complaint do not include Plaintiffs' latest claims regarding supposed discharges of TCE or hexavalent chromium into the air.  Nor have Plaintiffs attempted to explain how they could plausibly define and certify a class based on air emissions that Plaintiffs allege occurred decades ago.  At most, this new and unsupported exposure theory is reserved for Phase II.

In addition to being beyond the scope of their class allegations, Plaintiffs' second set of document demands to Northrop Grumman (the "Second Requests") entirely ignore that the deadline for serving formal requests for discovery during Phase I expired more than two and a half years ago.  (*See* ECF Nos. 44, 46 (approving Aug. 27, 2018 deadline to exchange Phase I written requests).)  Plaintiffs have not sought leave from your Honor or Judge Brown to serve belated requests.  Further, Plaintiffs misrepresent your Honor's directive at the February 4, 2019 hearing, which was to submit a revised schedule concerning deadlines to *complete* document productions, not to serve new requests.  Plaintiffs know this, as the proposed schedule they subsequently submitted did not include a deadline for new requests, but instead represented that Northrop Grumman had completed document production and that the next operative deadline was for Phase I depositions.  (ECF No. 87 at 3.)

In any event, Northrop Grumman responded to the Second Requests, raising certain objections including untimeliness, and will be making a supplemental production from the four agreed-upon custodial files based on the final list of search terms to be decided by Your Honor. (*See* Jan. 11, 2021 Responses to Second Requests, attached as Exhibit H.) Any documents from that review responsive to the Second Requests and relevant to Phase I will be produced. And Northrop Grumman has agreed to search other reasonably available sources of information beyond those custodial files for documents responsive to the Second Requests that pertain to class certification. Plaintiffs' complaint about the absence of a deadline for the production of information beyond the search terms is curious, because, as set forth below, Plaintiffs refuse to meet and confer on new dates for a schedule. Northrop Grumman proposes such dates below.

Moreover, this status report is the first time Northrop Grumman has heard Plaintiffs take issue with Northrop Grumman's responses and objections to the Second Requests, which Northrop Grumman served in early January. Northrop Grumman respectfully submits that if a dispute remains after Northrop Grumman makes its remaining production and after the parties have met and conferred on the Second Requests, then Plaintiffs can raise any such dispute with the Court. Plaintiffs' request of this busy Court for an advisory opinion as to the Second Requests should be denied. Northrop Grumman preserves its objection that the deadline for plaintiffs to serve Phase I discovery requests has long since passed.

### E. Phase I Discovery from Plaintiffs

Northrop Grumman's Position

Plaintiffs should produce any medical records or other documents in their possession concerning the allegations of exposure and causation, including any used to compile the Plaintiff Information Chart, as such information is relevant to Phase I and has been ordered by Judge Brown. (Dec. 3, 2020 Hrg. Tr. at 29:16–23 ("[W]hat's the harm in turning over the individual plaintiff information that you have? MR. NAPOLI: There is no harm, Your Honor, if we're going to do -- THE COURT: Well, then we should just do it."); *id.* at 31:19–20 ("[Plaintiffs are] going to give you the individual plaintiffs['] stuff."); *cf. Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 609 (1997) (class analysis turned on exposure and causation, because "[i]n contrast to mass torts involving a single accident, class members . . . were exposed to different [substances or amounts of a substance], in different ways, over different periods, and for different amounts of time; some suffered no physical injury, others suffered disabling or deadly diseases.").)

Finally, when Plaintiffs update their Plaintiff Information Chart, Northrop Grumman asked Plaintiffs' counsel to include all information Judge Brown had ordered Plaintiffs to provide, including the dates when all Plaintiffs claim to have been on notice of their alleged injuries. (*See* ECF No. 102 (requiring for each Plaintiff "[t]he dates that the personal injury or property damage or both were discovered").) To date, Plaintiffs' counsel has refused, submitting instead an addendum asserting that the filing of the *Romano* class action tolled the statute of limitations as to certain claims. (ECF No. 105 at 2.) Given that those Plaintiffs purport to be members of one or more of the proposed *Romano* classes for statute of limitations purposes, information about their alleged injuries and exposure is relevant to Phase I and should be produced. Northrop Grumman thus respectfully requests that Plaintiffs complete the "Date of Diagnosis," "Date of Discovery of

Physical Injuries," and "Property Damage: Date of Discovery" columns in their Information Chart for all Plaintiffs.

### Plaintiffs' Position

Nothing in Judge Brown's March 13, 2020 Order (ECF. 102), which asked for some basic information about the named plaintiffs' injuries, requires Plaintiffs to produce the detailed records and evidentiary material demanded by Defendants at this time. In fact, in repeated and detailed briefing regarding Defendants' *Lone Pine* request, Plaintiffs explained why the legal arguments and demands for records are premature. Judge Brown agreed and rejected the *Lone Pine* approach. Nothing in the Court's December 3, 2021 Order suggests that all named Plaintiffs should produce the above information. In fact, the Court has directed the parties to prepare for class certification, an inquiry focused on class categories and class representatives. Defendants themselves have repeatedly stressed the limited nature of "Phase I" disclosure for this very reason. Their reiterated demand for all records for all plaintiffs named in the seven related actions, is both inconsistent with their position and contrary to the Court's direction at this time. Plaintiffs have already provided the summary chart ordered by the Court and have agreed to update it by April 30, 2020. It includes all injury and diagnosis information for every plaintiff. Accrual dates of discovery of injuries involve legal questions, which have already been litigated, and are summarized in the Addendum. As for the putative class representatives. Plaintiffs have already provided comprehensive Fact Sheets and numerous authorizations, which Defendants have used to obtain hundreds of pages of records. For these individuals, Plaintiffs have agreed to check for and provide additional authorizations for any new medical providers.

### F. **Proposed Schedule**

### Plaintiffs' Position

Plaintiffs request the Court to schedule a conference at its earliest convenience to discuss and resolve the above discovery disputes. The parties cannot, in good faith, set dates certain for the close of discovery and depositions before Northrop Grumman's document production, which, based on their own admissions above, contains thousands of additional pages of documents, is complete. Doing so, would severely prejudice Plaintiffs and create an artificial and unrealistic limitation on their ability to obtain evidence required for their expert reports. At this time, Defendants' continuing objections to produce what this Court just recently told them to produce, is impeding progress toward class certification.

In addition, as briefly noted above and also discussed in previous correspondence and meet and confers with Defendants, Plaintiffs intend to propose an amended class action complaint. The original complaint in this action was filed in September 2016. In the process of investigation and discovery, it is now apparent that the Site-related contamination is much broader than originally thought, both in nature and geographic scope. Subsequently filed actions (*Ackerman, Ackerson, Ball, Cornett, Cammarata* and *Auer*) contain updated factual allegations about the contaminants and routes of exposures, including the extensive pollution caused by Grumman's toxic air emissions. In order to ensure that all of these allegations are properly addressed by the class action, Plaintiffs are working on a draft Third Amended Complaint in the *Romano* action. When

completed, Plaintiffs will present the draft to Defendants, to see if an amended filing can be done on consent. If this is not possible, Plaintiffs intend to make a motion to amend.

Northrop Grumman's Position

Plaintiffs' motion for class certification is due September 1. The last operative Phase I schedule approved in October 2018, prior to the stay of class discovery, contemplated completion of document discovery, depositions of named Plaintiffs regarding class certification issues, and identification of class certification experts. (October 1, 2018 Order Regarding ECF No. 56.) Northrop Grumman respectfully submits that those deadlines need to be updated and can be adapted to fit Plaintiffs' September 1, 2021 deadline to move for class certification as follows:

| Event | Proposed Deadline |
| --- | --- |
| Production of Documents Complete | April 30, 2021 |
| Depositions of named Plaintiffs regarding class certification issues complete | June 30, 2021 |
| Plaintiffs' Identification of class certification experts | June 30, 2021 |
| Defendants' identification of rebuttal class certification experts | July 30, 2021 |

Northrop Grumman respectfully requests a conference on April 30 to confirm the above dates remain workable, during which time the parties can discuss remaining dates leading up to the deadline for Plaintiffs' motion for class certification, including service of plaintiffs' opening expert reports.

As for Plaintiffs' intention to seek leave to file a third amended complaint, as noted above, the time to amend expired in October 2018. In December 2020, Judge Brown asked Plaintiffs when they wanted to move for class certification and they did not suggest there was any need for leave to amend again. It is unclear when Plaintiffs propose to seek leave, however Northrop Grumman reserves all rights to oppose a belated and untimely further amendment.

G. **Consolidation and Joint Filing Procedures**

As noted in the caption of this letter, this litigation currently involves the *Romano* class action and six related actions. By Orders dated February 10, 2020 and March 13, 2020, the Court directed that the *Romano*, *Ackerman*, *Ackerson*, *Ball* and *Cammarata* actions be consolidated for purposes of discovery. The parties respectfully request the Order to be expanded to include the two other related actions (*Cornett* and *Auer*), which are based on the same operative facts relating to Defendant, Northrop Grumman. Furthermore, for ease of filing of documents during Phase I, the parties request the Court to order that all filings shall be made to the *Romano* docket and indicate the related docket numbers for the above captioned "related actions." To the extent any filing relates to a specific action and not others, it should state so.

\*    \*    \*

| | |
|---|---|
| NAPOLI SHKOLNIK<br><br>By: _____<br>Lilia Factor<br><br>400 Broadhollow Rd.<br>Melville, NY 11747<br>Telephone: (212) 397-1000<br>lfactor@napolilaw.com;<br><br>Paul Napoli<br>Email: pnapoli@nsprlaw.com<br><br>ENVIRONMENTAL LITIGATION GROUP, PC<br>Gregory A. Cade<br>Greg Anderson<br>Kevin B. McKie<br>2160 Highland Avenue South<br>Birmingham, AL 35205<br>Telephone: (205) 328-9200<br>email:   GregC@elglaw.com;<br>gary@elglaw.com; kmckie@elglaw.com<br><br>*Counsel for Plaintiffs* | MORRISON & FOERSTER LLP<br><br>By: _____<br>Jessica Kaufman<br>Katie L. Viggiani<br><br>250 West 55th Street<br>New York, New York 10019<br>Telephone: (212) 468-8000<br>Facsimile: (212) 468-7900<br>Email:  jkaufman@mofo.com;<br>kviggiani@mofo.com<br><br>*Attorneys for Defendants Northrop Grumman Corporation and Northrop Grumman Systems Corporation*<br><br><br>MILBER MAKRIS PLOUSADIS & SEIDEN, LLP<br><br>By:  /s/ Peter Tamigi<br>Peter F. Tamigi<br><br>1000 Woodbury Road, Suite 402<br>Woodbury, New York 11797<br>Telephone: (516) 715-4000<br>Email: ptamigi@milbermakris.com<br><br>*Attorneys for Defendant Town of Oyster Bay* |