# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
ROSALIE ROMANO; PATRICIA GLUECKERT, individually and on behalf of the Estate of WILLIAM G. GLUECKERT; WILLIAM P. GLUECKERT; JAYNE MANN; ROSS MEADOW and ARLENE MEADOW; JACOB KHOLODNY and BELLA KHOLODNY; FLO RAUCCI, individually and on behalf of the Estate of SALVATORE RAUCCI; DANIEL GALLANTE and JENNIFER GALLANTE; TERESA MEADE, DONALD LAGOMARSINO, SCOTT RUST, LAURIE FRANK, THOMAS NUCCI, CHRISTOPHER BLADES, DAWN CIRINO-SAMBADE, MARY ELLEN GINTY, JOHN SCHLOSSER, individually and on behalf of all others similarly situated; and DENISE FLORIO; MARYANN HERBERT; CHRISTINA ANDREWS-SALES; CHRISTOPHER CAGNA; JACKIE LIEBERMAN; CATHERINE LEWONKA; EUGENE CONNOLLY; VIVIANE BLICKENSDERFER; DANA BLICKENSDERFER; GLENN FALINO and MARCIA FALINO; individually,

Case No: 16-cv-5760

        Plaintiffs,

-against -

NORTHROP GRUMMAN CORPORATION; NORTHROP GRUMMAN SYSTEMS CORPORATION

        Defendants.
-----------------------------------------------------------------------X

## PLAINTIFFS' NOTICE OF ORAL AND VIDEOTAPED DEPOSITION OF DEFENDANTS

Please take notice that, pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiffs, by and through their attorneys of record, will take the oral and videotaped deposition of Defendants Northrop Grumman Corporation and Northrop Grumman Systems Corporation on July 12, 2021, commencing at 10:00 a.m. (EST). Plaintiffs will allow for a remote deposition and related accommodations to the extent necessary and reasonable due to impacts of the COVID-19

pandemic. Accordingly, the witness(es), counsel, and the court reporter may be in locations to be mutually agreed upon by counsel for the Parties.

Please take further notice that the deposition will be recorded stenographically and may also be recorded by videotape and by instant virtual display of the testimony before an officer authorized by Federal Rule of Civil Procedure 28. If the deposition is not completed, it will continue from day to day, excluding Sundays and holidays, until completed. Plaintiffs reserve the right to leave the deposition(s) open and continue the questioning upon receipt of additional material relevant to the witness(s)' testimony. The deposition may be used for discovery purposes and introduced as evidence at trial.

Please take further notice that the Defendants are corporations. Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendants are required to designate a person or persons most qualified to testify on its behalf regarding the matters listed in **Schedule A** attached hereto. Plaintiffs request that Defendants provide the name(s) and title(s) of the person(s) they will designate to give testimony and summaries of the areas in which each designated person will give testimony at least five (5) days prior to the scheduled deposition. Exhibits for this deposition may be marked digitally by video teleconferencing/teleconferencing and all original exhibits will be maintained by the court reporter. Under Federal Rules of Civil Procedure 30(b)(2) and 34, Defendants are requested to produce all documents consulted, relied upon or otherwise used to prepare the designated witness to address each of the topics listed on Schedule A fourteen (14) days before the deposition of that witness is to take place.

Plaintiffs requests that Defendants produce a copy of the designated representative's current curriculum vitae or résumé at each deposition.

**Duty to Designate**

By designating a representative, Defendants indicate that their representative has authority to speak on their behalf on the matters listed in this notice – not only to facts, but also to subject beliefs and opinions.

**Duty to Substitute**

If it becomes clear that the chosen representative is unable to respond to questions on the matters for which he or she has been designated, Defendants must immediately provide a substitute knowledgeable witness. This is required even if the initial designation was made in good faith.

**Duty to Prepare**

The testimony elicited in the deposition represents Defendants' knowledge, not the individual deponent's knowledge. Defendants must conduct a thorough investigation in response to the deposition notice and must prepare a witness to testify to all matters "known or reasonably available to the organization." Therefore, if Defendants' designee is not knowledgeable about the matters specified in the deposition notice, it must nonetheless prepare such designee to give knowledgeable, binding answers.

"Reasonably available" information includes all documents that the organization has the authority, legal right, or practical ability to obtain. An inadequately prepared designated witness will amount to an impermissible refusal to answer and a sanctionable failure to appear.

Dated: Melville, New York
      June 16, 2021

                                    Respectfully,

                                    NAPOLI SHKOLNIK

                                    By: _____

Lilia Factor

400 Broadhollow Rd.
Melville, NY 11747
Telephone: (212) 397-1000
lfactor@napolilaw.com;

Paul Napoli
Email: pnapoli@nsprlaw.com

ENVIRONMENTAL LITIGATION GROUP, PC
Gregory A. Cade
Greg Anderson
Kevin B. McKie
2160 Highland Avenue South
Birmingham, AL 35205
Telephone: (205) 328-9200
email:   GregC@elglaw.com;
gary@elglaw.com; kmckie@elglaw.com

*Counsel for Plaintiffs and the Class*

# SCHEDULE A

## Definitions

The following definitions apply to this Notice of Deposition and are deemed to be incorporated into each subject listed below:

1. As used herein**, "you," "your"** and **"Grumman"** refers to Grumman Corporation, Grumman Aerospace Corporation, Northrop Grumman Corporation and/or Northrop Grumman Systems Corporation, and includes all past and present officers, directors, employees, predecessors, successors, subsidiaries, parent corporations, partners, affiliates, agents, servants, representatives, independent contractors, consultants, counsel and all other persons acting or purporting to act at the direction of or on behalf of Defendants.

2. As used herein, **"person(s)"** refers to any natural person, firm, agency, organization, association, partnership, joint venture, corporation, public entity or any other kind of business, legal or governmental entity or association, and any person, officer, agent, or representative acting on behalf of said person(s).

3. As used herein, **"communication(s)"** refers to any act, action, oral speech, written correspondence, contact, expression of words, thoughts, ideas, transmission or exchange of data or other information to another person, whether orally, person-to-person, in a group, by telephone, letter, personal delivery, telex, email, facsimile, text message, instant message, recorded message or any other process—electronic, computer, or otherwise. All such communications in writing shall include, without limitation, printed, typewritten, handwritten, electronic, or other document(s).

4. As used herein, **"document(s)"** shall have the broadest meaning possible and shall mean all documents, electronically stored information, and tangible things discoverable under Rule 34 of the Federal Rules of Civil Procedure, including without limitation: all writings and all other means of recording information, whether written, transcribed, taped, filmed, microfilmed, or in any other way produced, reproduced, or recorded, and including but not limited to originals (or identical duplicates when originals are not available), drafts, computer-sorted and computer-retrievable information, copies and duplicates that are marked with any notation or annotation or otherwise differ in any way from the original, correspondence, memoranda, reports, notes, minutes, contracts, agreements, leases, subleases, lease assignments, amendments, books records, checks, vouchers, permits, invoices, purchase orders, hazardous waste manifests, timesheets, bills of lading, receipts, ledgers, diaries, logs, calendars, computer printouts, computer disks, card files, lists of persons attending meetings or conferences, site plans, floor plans, blueprints, equipment lists, maps, diagrams, drawings, photographs, sketches, calculations, evaluations, analyses, directions, work papers, press clippings, sworn or unsworn statements, requisitions, manuals or guidelines, audit work papers, financial analyses, tables of organizations, charts, graphs, indices, advertisements and promotional materials, audited and unaudited financial statements, trade letters, trade publications, newspapers and newsletters emails, electronic or mechanical records, facsimiles, telegrams and telecopiers, and audiotapes. Each draft, annotated, or otherwise non-identical copy is a separate document within the meaning of this term. Documents shall also include any removable sticky notes, flags, or other attachments affixed to any of the foregoing, as

well as the files, folder tabs, and labels appended to or containing any documents. Documents expressly include all electronic records.

5. As used herein, **"relating to," "related to," and "concerning"** shall include within their meaning "containing," "alluding to," "responding to, "commenting upon," "discussing," "explaining," "mentioning," "analyzing," "constituting," "memorializing," "compromising," "reporting," "incorporating," "confirming," "listing," "evidencing," "setting forth," "summarizing," or "characterizing," either directly or indirectly, in whole or in part.

6. As used herein, the "**Site**" means the Grumman-Navy facilities consisting of approximately 635 acres in Nassau County, including the Grumman Aerospace-Bethpage Facility Site, the Northrop Grumman – Bethpage Facility, the Naval Weapons Industrial Reserve Plant – Bethpage ("NWIRP"), the Grumman Steel Los Site and the area currently known as Bethpage Community Park (former Grumman property) located in Bethpage, Nassau County, New York.

7. As used herein, "**Contaminants**" means any toxic and/or hazardous compounds used, stored, disposed or released at, and/or migrating from the Site, including, but not limited to:

   a. Trichloroethylene ("TCE")
   b. Hexavalent chromium
   c. Volatile Organic Chemicals ("VOCs")
   d. Semivolatile organic compounds ("SVOC"s)
   e. Polychlorinated biphenyls ("PCBs");
   f. Arsenic, Cadmium, Chromium, Lead, Mercury
   g. Perchlorate
   h. Radium 226 and Radium-228
   i. Radon
   j. 1,4-dioxane
   k. Perfluoroalkyl and polyfluoroalkyl contaminants, including perfluorooctanoic acid ("PFOA") and perfluorooctanesulfonate ("PFOS").

8. As used herein, **"Contamination"** means pollution of environmental media, including soil, air, soil vapor, surface and groundwater, with detectable levels of any "contaminants", as defined above.

9. As used herein, "**Site-related contamination**" is intended to include all pollution at the Site, all operative units ("OU") designated by the New York State Department of Environmental Conservation and/or the U.S. Navy, as well as any other pollution that is known, believed or suspected to have originated, in whole or in part, from the Site.

10. As used herein, **"air emissions"** shall mean releases of air pollutants including gases, vapors, aerosols, and/or dust from buildings, equipment, and areas at the Site, whether from processes, stacks, fugitive sources, or area sources.

11. As used herein, **"adverse health impacts"** means any possible or actual effect, impact, alteration, change, ailment, sickness and/or disease relating to humans, including but not limited to carcinogenicity and effects on human fetal development.

12. As used herein, the term **"handle(d)"** or **"handling"** shall mean to possess, store, use, operate, maintain, touch, transfer, place, move, or disturb in any manner.

13. As used herein, the term **"disposal"** means discharge, deposit, dispersal, burial, injection, dumping, spilling, leaking, or removing.

14. As used herein, **"Facility"** includes, but is not limited to, plants and appurtenant buildings, below-ground and above-ground structures, machinery and equipment, utilities, tanks and vessels, pipelines and sewers, railroads and sidetracks, loading/unloading areas, storage areas, dumps and landfills, drying beds and recharge basins, etc.

15. As used herein, **"AFFF"** refers to "aqueous film-forming foam", a firefighting suppressant agent used in fire training and firefighting activities, which contains PFOA, PFOS, and/or their chemical precursors.

16. "NCDOH" refers to the Nassau County Department of Health.

17. "NCDPW" refers to the Nassau County Department of Public Works.

18. "NYSDEC" refers to the New York State Department of Conservation.

19. "NYSDOH" refers to the New York State Department of Health.

20. "USEPA" refers to the United States Environmental Protection Agency.

21. "OSHA" refers to the Occupational Safety and Health Administration.

22. As used herein, **"Processes"** refers to any manufacturing processes utilized at the Site including, but not limited to, machining, shaping, heat treating, degreasing, descaling, de-oxidizing, etching, anodizing, plating, passivating, cleaning, painting, bonding, sealing, stripping, rework, touch-up, wastewater, waste treatment and storage, etc.

23. As used herein, the term **"disposal"** means discharge, deposit, dispersal, burial, injection, dumping, spilling, leaking, or removing.

24. As used herein, **"Waste"** refers to unwanted materials or byproducts left over from a manufacturing process or other activity that occurred at the Site. Specifically, waste includes all unwanted and byproduct materials generated at the Site at any point in the process of historical manufacturing operations at the Site.

25. As used herein, **"Bethpage area"** includes the hamlet of Bethpage, New York, and nearby communities located within the Town of Oyster Bay and the Town of Hempstead in Nassau County, including, but not limited to Hicksville, Levittown, Plainview, Plainedge, Wantagh, Seaford, Massapequa, Massapequa Park, and Farmingdale, as wells as any other residential areas impacted by Site-related contamination.

# **TOPICS FOR EXAMINATION**

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Defendants shall be prepared to testify regarding the following subjects.

1. Identification of persons with knowledge of the factual basis for the allegations in the Third Amended Complaint and Defendants' defenses in this action.

2. Identification of the historic Facilities at the Site, their function and general operations.

3. All maps, aerial photographs, and other various graphical illustrations of the Grumman and NWIRP Facilities.

4. All data and documents describing the production chemicals used by Grumman in its Processes at the Site including, but not limited to, purchase records, storage records, usage inventories, etc.

5. For each type of Waste generated by Grumman's operations at the Site, the chemicals and/or Contaminants known or later determined to be contained in the Waste.

6. Grumman's disposal of Waste at the Site, including, for each type of Waste, the quantity, method and location of disposal.

7. Grumman's disposal of Waste at Bethpage Community Park, including, for each type of Waste, the quantity, method and location of disposal.

8. Grumman's disposal of Waste at any location(s) off-Site, including, for each type of Waste, the quantity, method and location of disposal.

9. First and last known use of each of the Contaminants by Grumman at the Site.

10. All known or suspected leaks, spills, failures, breaches, or other releases of Contaminants at the Site.

11. All known or suspected releases of Contaminants into the ground or soil, including in the Bethpage area.

12. All known or suspected releases Contaminants into the air, including in the Bethpage area.

13. All known or suspected releases of Contaminants into the surface or groundwater in the Bethpage area.

14. The extent and characteristics of Site-related contamination of groundwater in the Bethpage area, both historical and current.

15. All modeling of groundwater prepared by Grumman including, but not limited to numerical groundwater transport, chemical particle tracking, and vadose zone modeling.

16. All actions taken by Grumman to prevent, mitigate, and/or remediate the contamination of drinking water in the Bethpage area.

17. Costs of treatment, plant upgrades, filtration and all other remedial measures undertaken directly by Grumman or by water districts in the Bethpage area and financed by Grumman, in order to address Site-related contamination.

18. Potential and actual sources of air emissions from manufacturing activities at the Site including, but not limited to, materials receiving, machining and mechanical processing, maskant application, chemical milling, heat treating, sealants, adhesive bonding, cleaning, metal finishing, coating application, coating removal, electrodeposition, composites processing, testing, waste treatment, chemical recovery, cooling tower operations, wastewater operations, etc.

19. The dates at which rerouting, process re-engineering, or emissions control devices were proposed and/or implemented specifically to address air emissions sources from any point of discharge at the Site.

20. Emissions factors or source terms that pertain to equipment and/or areas with air emissions at the Site.

21. Operating parameters of regulated emissions units including, if applicable, equipment make and model; design capacity; operating specifications; effluent, stack or vent gas temperature and flow rate; release stack height; stack diameter; actual and estimated emission control efficiency;and other operating/monitoring parameter(s) applicable to the unit.

22. Meteorological information relevant to the Site including, but not limited to, records obtained from weather station(s) at the Site, weather stations located near the Site, and meteorological data purchased from vendors.

23. Air emissions estimates including, but not limited to, calculations, assessments, evaluations and/or other considerations of stack testing results, emission factors, validation of emission factors, emission results, or other analytical data or modeling involving air emissions from the Site.

24. Process equipment and operating conditions, emission factors, emissions evaluation, monitoring and testing of emissions, and air dispersion modeling for all regulated and otherwise operating emissions sources (e.g., cleaning, metal finishing, coating application, etc.).

25. Evaluations of overspray in paint booths, dip tanks, dip vats, material preparations, degreasers, and all sources of controlled and uncontrolled fugitive emissions, including but not limited to, spray gun efficiency, overspray measurements, particle size, contaminant content, emission control measured efficiency, fallout, and actual emissions.

26. Evaluations of air emissions from the Site including, but not limited to, sampling of plant atmospheres, audits and inspections, recommendations to reduce emissions, requirements and cost estimates, emissions testing, evaluation of pollution control devices, evaluations of ventilation systems, etc.

27. Maintenance and cleaning procedures of paint booths, degreasers, dip tanks, and dip vats, including but not limited to, types of maintenance and cleaning procedures for paint guns (by type of paint gun), exhaust fans, water curtains, filters, and other emission controls.

28. The volume of paint used by Grumman at the Site, by product and by year.

29. Maintenance, operating procedures, and testing relating to controlled, fugitive, and uncontrolled emissions at the Site.

30. Ambient air testing, workplace air monitoring and/or sampling conducted at the Site or off-site within the Bethpage area.

31. Emissions testing for stacks, vents, or other equipment, buildings, ventilation systems, or other sources of air Contaminants at the Site.

32. Audits conducted by OSHA and/or any state agency relating to air emissions at or issuing from the Site, including any related monitoring, sampling, and corrective measures.

33. The composition and testing of Contaminants in coatings used in the manufacturing process at the Site including, but not limited to, base coats, primers, top coats, etc.

34. The speciation of chromium (e.g., hexavalent chromium) for air emissions associated with chromium-containing coatings or solutions used at the Site.

35. Processes and locations of equipment (e.g, degreasers), operations areas (e.g., cleaning), and storage and treatment areas that involved chlorinated solvents (e.g., trichloroethylene).

36. Screening or modeling of air emissions from the Site including, but not limited to, Contaminants, criteria air pollutants, and other unregulated pollutants.

37. Information submitted by Grumman to USEPA in the context of the USEPA's National Emission Standards for Hazardous Air Pollutants (NESHAP) program, including in response to Section 114 Questionnaire(s), emissions estimates, calculations, modeling, etc.

38. All data and documents relating to the Site concerning USEPA's National Emergency Planning and Community Right-to-Know Act (EPCRA) and Toxic Release Inventory (TRI) program including, but not limited to, annual air emissions estimates for hazardous air pollutants and calculations used to develop estimates (i.e., Form R, Basis of Estimate).

39. All data and documents relating to the Site for permitting, monitoring, reporting, and compliance with the Clean Air Act (CAA) and state air pollution control regulations, standards, programs, rules, and state administration of delegable provisions of the CAA.

40. Grumman's air permit applications for any Facilities or other operations at the Site, air permits issued, notices of violations issued by any regulatory agency, enforcement actions and compliance records.

41. Grumman's communications with any health and safety organizations including, but not limited to, the Air Hygiene Foundation, American Society for Testing and Materials, Industrial Health Foundation, Industrial Hygiene Foundation, National Safety Council, etc. relating to air emissions from the Site.

42. Studies commissioned by and/or sponsored by Grumman concerning the health effects of exposure to the Contaminants, including raw chemicals, Waste, wastewater, and/or air emissions escaping from any Processes.

43. Grumman's internal communications about health and safety hazards and air emissions emission control efficiency, emission factors, and operating attributes related to estimated air emissions or emission factors (i.e. percent overspray) associated with the Contaminants, including, but not limited to, communications to or from Grumman departments such as: materials engineering, facilities engineering, environmental operations, facilities maintenance, health and safety, industrial hygiene, medical, legal, and public relations, etc.

44. Fire training operations conducted at the Site, including but not limited to, the location, frequency and type of training and the use of AFFF in the training.

45. Records, procedures and incidents of fire suppression activities at any Facilities at the Site.

46. The amounts of AFFF ordered by Grumman for its operations at the Site, procedures for handling, storage and use of AFFF, and disposal of waste and/or unused AFFF product.

47. The remediation of Site-related contamination, including, but not limited to, the quantity of Contaminants captured and removed from the air, groundwater, and soil.

48. All amounts spent by Grumman to investigate and remediate Site-related contamination.

49. All efforts by Grumman to reduce adverse health impacts from Site-related contamination.

50. All communications between Grumman and any federal, state or local agency, including but not limited to NCDOH, NCDPW, NYSDEC, NYSDOH, USEPA, the Town of Oyster Bay, and the Town of Hempstead regarding Site-related contamination and/or adverse health impacts from the Contaminants.

51. All communications between Grumman and any water district or school district in the Bethpage area regarding Site-related contamination and/or adverse health impacts from the Contaminants.

52. All communications between Grumman and current and/or former residents of the Bethpage area regarding Site-related contamination and/or adverse health impacts from the Contaminants.

53. All other communications to or from Grumman relating to the adverse health impacts caused or believed to be caused to any individual from contact with or exposure to the Contaminants at Bethpage Community Park and/or anywhere in the Bethpage area.

54. All documents, communications, and discussions regarding the impacts of Site-related contamination on property values in the Bethpage area.

55. All communications between Grumman and any media outlet, reporter, and/or journalist relating to toxic exposure, adverse health impacts or damages from a decrease in property values caused to residents in the Bethpage area as a result of Site-related contamination.

56. At all relevant times, the names of Grumman employees with primary responsibility for each of the following: a) the storage and disposal of Contaminants; b) the disposal of Waste generated from operations at the Site; c) reporting and mitigation of air emissions generated at the Site; d) the investigation and remediation of Site-related contamination; e) the approval of expenditures for items a) through d).