**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROSALIE ROMANO; PATRICIA GLUECKERT, individually and on behalf of the Estate of WILLIAM G. GLUECKERT; WILLIAM P. GLUECKERT; JAYNE MANN; ROSS MEADOW and ARLENE MEADOW; JACOB KHOLODNY and BELLA KHOLODNY; FLO RAUCCI, individually and on behalf of the Estate of SALVATORE RAUCCI; DANIEL GALLANTE and JENNIFER GALLANTE; TERESA MEADE, DONALD LAGOMARSINO, SCOTT RUST, LAURIE FRANKS, THOMAS NUCCI, CHRISTOPHER BLADES, DAWN CIRINO-SAMBADE, MARY ELLEN GINTY, JOHN SCHLOSSER, individually and on behalf of all others similarly situated; and DENISE FLORIO; MARYANN HERBERT; CHRISTINA ANDREWS-SALES; CHRISTOPHER CAGNA; JACKIE LIEBERMAN; CATHERINE LEWONKA; EUGENE CONNOLLY; VIVIANE BLICKENSDERFER; DANA BLICKENSDERFER; GLENN FALINO and MARCIA FALINO; individually,<br><br>                Plaintiffs,<br><br>vs.<br><br>NORTHROP GRUMMAN CORPORATION; NORTHROP GRUMMAN SYSTEMS CORPORATION<br><br>                Defendants. | **CIVIL ACTION NO.**<br><br>**16-cv-5760–GRB AKT** |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT
OF MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................1

II. ARGUMENT ....................................................................................................2

    A.    THE PLAINTIFFS HAVE PROVEN THAT EACH CLASS
           REPRESENTATIVE HAS STANDING TO SEEK THE SOUGHT AFTER
           RELIEF. ..........................................................................................................2

    B.    THE PLAINTIFFS HAVE PROVEN ALL REQUIREMENTS OF RULE
           23(a) BY A PREPONDERANCE OF THE EVIDENCE. ....................................4

           1.    Because the Plaintiffs presented evidence that the classes are defined
                 by objective criteria which establish a membership with definite
                 boundaries, the Plaintiffs have proven that each class is ascertainable.......4

           2.    The Defendants have failed to show that there are no common issues
                 under Rule 23(a)(2). ................................................................................7

           3.    The Defendants have failed to show that typicality is lacking. .................9

           4.    Defendants have failed to show any reason why the representative
                 parties would not fairly and adequately protect the interests of the
                 class. ....................................................................................................12

    C.    THE PLAINTIFFS HAVE PROVEN ALL REQUIREMENTS OF RULE
           23(b)(2), (b)(3), and (c)(4) BY A PREPONDERANCE OF THE
           EVIDENCE. ...................................................................................................15

           1.    The Defendants failed to raise a credible objection to the Rule
                 23(b)(2) certification of either Medical Monitoring Class. .....................15

           2.    The Defendants failed to show that certification under Rule 23(b)(3)
                 is improper. ..........................................................................................17

           3.    The Defendants have failed to show certification under Rule 23(c)(4)
                 is improper. ..........................................................................................19

III. CONCLUSION.................................................................................................20

TABLE OF AUTHORITIES

Cases

*Amcham Products Inc., v. Windsor*, 521 U.S. 591 (1997) ....................................................12, 13

*Baker v. St.-Gobain Performance Plastics Corp.*, 232 F. Supp. 3d 233, 244-46 (N.D.N.Y. 2017) ...........................................................................................................................................11

*Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409 (S.D.N.Y. 2012)...........4

*Central States Southeast v. Merck-Medco*, 504 F.3d 229 (2nd Cir. 2007) .................................10

*Cervantes v. CRST Int'l, Inc.*, 2022 U.S. Dist. LEXIS 105781, 2022 WL 2130811 (N.D. Iowa 2022).............................................................................................................................................9

*Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019) .....................................................2

*Cottonaro v. Southtowns Indus., Inc.*, 625 N.Y.S.2d 773, 774 (App. Div. 1995) ........................11

*D'Amico v. Waste Mgmt. of N.Y., LLC*, 2019 U.S. Dist. LEXIS 50323, at *12-*22 (W.D.N.Y. 2019).............................................................................................................................................11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).........................................8

*Denney v. Deutsche Bank Ag*, 443 F.3d 253 (2nd Cir. 2006).........................................................3

*Earl v. Boeing Co.*, 339 F.R.D. 391, 2021 U.S. Dist. LEXIS 167384, 2021 WL 4034514 (E.D. Tex. 2021).....................................................................................................................................4

*Francisco v. NY Tex. Care, Inc.*, 2022 U.S. Dist. LEXIS 55633, *9-*10 (E.D.N.Y. Mar. 28, 2022)..........................................................................................................................................20

*Gibbs v. EI DuPont De Nemours & Co., Inc.*, 876 F. Supp. 475 (W.D. N.Y. 1995) ..................15

*In re Marriott Int., Inc. Customer Data Sec. Breach Litig.*, MDL No. 19-md-2879 (D. Md. May 3, 2022).......................................................................................................................................4

*In re Petrobras Sec.*, 862 F.3d 250 (2nd Cir. 2017) ......................................................................6

*Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128 (2nd Cir. 2015) ................................................8

*Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88 (2nd Cir. 2018)..........................2, 6

*Leslie v. Medline Indus., Inc.*, 2021 U.S. Dist. LEXIS 188945, 2021 WL 4477923 (N.D. Ill. September 30, 2021) ....................................................................................................................3

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)...................................................................3

*Prantil v. Arkema France S.A.*, 2022 U.S. Dist. LEXIS 89217, 2022 WL 1570022 (S.D. Texas May 18, 2022)..................................................................................................16, 17

*Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147 (2nd Cir. 2001)..................................10

*Simmons v. Trans Express Inc.*, 16 F.4th 357 (2nd Cir. 2021).......................................................14

*TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (2021) ....................................................................3

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 463, S. Ct. 1036 (2016)...................................6

*Walker v. City of E. Chicago*, 2017 U.S. Dist. LEXIS 160729, 2017 WL 4340259 (N.D. Ind. Sept. 29, 2017).......................................................................................................................3

*Walmart Stores v. Dukes*, 564 U.S. 338 (2011)............................................................................8

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998)...........................................................................16

*Watson v. Manhattan Luxury Autos., Inc.*, 2022 U.S. Dist. LEXIS 178069, *6 (S.D.N.Y. Sept. 29, 2022)...................................................................................................................................8

Rules

Fed. R. Evid. 702 ..........................................................................................................................8

Fed. R. Civ. Pro. 23...............................................................................................................*passim*

# I. <u>INTRODUCTION</u>

Defendants filed an opposition to class certification [hereinafter cited as <u>Defendants'</u> <u>Opposition</u>]. Plaintiffs respectfully submit this brief in reply. For the reasons stated in this brief, and in Plaintiffs<u>' Memorandum of Law in Support of Motion for Class Certification</u> [hereinafter cited as <u>Plaintiffs' Memorandum</u>], Plaintiffs reiterate their request for the Court to certify the following classes:

The Medical Monitoring Class

All current and former residents of the Bethpage Area who have been exposed to the Contaminants discharged by Defendants, whether through the air, dust, soil, groundwater, drinking water, soil vapor or any other means of exposure, for a period of one year or more — to establish medical monitoring as "reasonably anticipated" consequential damages resulting from their exposure to the aforementioned toxins.

The Medical Monitoring Class — Alternate Subclass

All current owners of residential real property in the Bethpage Area whose real property has been damaged and reduced in value by the invasion of the contaminated water plumes, and/or the stigma of being located near the Site, and who have been exposed to the Contaminants discharged by Defendants,  for a period of one year or more to establish medical monitoring as "reasonably anticipated" consequential damages resulting from their exposure to the aforementioned toxins.

The Property Damage Class

All current owners of residential real property in the Bethpage Area, which has been impacted by Defendants' Contaminants in the air, dust, soil, groundwater, drinking water, soil vapor or any other environmental medium for damages due to the diminution of value due to the known or perceived contamination in the area, and/or stigmatization of property.

The Property Damage — Alternate Subclass (Liability Only)

All current owners of residential real property in the Bethpage Area, which has been impacted by Defendants' Contaminants in the air, dust, soil, groundwater, drinking water, soil vapor or any other environmental medium for damages due to the diminution of value due to the known or perceived contamination in the area, and/or stigmatization of property.

## II. <u>ARGUMENT</u>

A.  **THE PLAINTIFFS HAVE PROVEN THAT EACH CLASS REPRESENTATIVE HAS STANDING TO SEEK THE SOUGHT AFTER RELIEF.**

Defendants contend the <u>Motion for Class Certification</u> should be denied on standing grounds. They assert that each member of the Property Damage putative classes must have *standing to recover damages* and, to prove standing, that each class member will need to prove he or she suffered an injury that is concrete, particularized, and actual or imminent. <u>Defendants' Opposition</u> at 21. Defendants incorrectly assert that the Property Damage putative class members cannot prove any actual or imminent injury by class-wide evidence. With respect to the Medical Monitoring Class, Defendants contend that the putative class members lack standing because they cannot prove a present physical injury, requiring that class certification be denied. *Id. at* 26.

Both arguments are meritless, confused, and misleading. First, "for a class action to be justiciable, 'all that the law requires' is that **a named plaintiff** have standing." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019) (emphasis added). <u>See also</u> *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88 (2nd Cir. 2018) ("as long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3)"). Putative class members **at the class certification stage** accordingly are not required to submit *evidence* of standing:

> We do not require that each member of a class submit evidence of personal standing. See, e.g., *Rozema v. The Marshfield Clinic*, 174 F.R.D. 425, 444 (W.D.Wis. 1997) ("Those represented in a class action are passive members and need not make individual showings of standing."); *PBA Local No. 38 v. Woodbridge Police Dep't*, 134 F.R.D. 96, 100 (D.N.J.1991) ("Once it is ascertained that there is a named plaintiff with the requisite standing, however, there is no requirement that the members of the class also proffer such evidence."); see also Herbert B. Newberg & Alba Conte, 1 NEWBERG ON CLASS ACTIONS § 2.7 (4th ed. 2002) ("[P]assive members need not make any individual showing of

standing, because the standing issue focuses on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court.").

*Denney v. Deutsche Bank Ag*, 443 F.3d 253, 263-64 (2nd Cir. 2006).

Hence, Defendants misrepresent the standing requirements *at the class certification stage* with the standing requirements at the post-certification damages phase.[1]

Defendants do not contend the Class Representatives for the Property Damage Classes, or the Medical Monitoring Class, lack standing. Each Class Representative has alleged damage to real property and/or personal injury caused by Defendants' tortious conduct, and each has an increased risk of future illness resulting from exposure to the toxic substances released by Defendants. E.g., *Leslie v. Medline Indus., Inc.*, 2021 U.S. Dist. LEXIS 188945, *17, 2021 WL 4477923 (N.D. Ill. September 30, 2021) (for "purposes of standing, 'risk of contamination' is an 'actual and imminent' injury"); *Walker v. City of E. Chicago*, 2017 U.S. Dist. LEXIS 160729, *36, 2017 WL 4340259, at *12 (N.D. Ind. Sept. 29, 2017) (finding that the plaintiffs' exposure to high levels of lead and arsenic at the site of a public housing complex was a sufficiently a "concrete and particularized" injury to satisfy the first prong of standing).

Nor are the named Plaintiffs required to prove standing by class-wide *evidence* at the class certification stage. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim . . . .'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

---

[1] Although class members must have standing post-certification to recover damages, the Supreme Court has never ruled that putative class members must have standing at the class certification stage. See *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2208 n.4 (2021) ("We do not here address the distinct question whether every class member must demonstrate standing before a court certifies a class"). Hence, the rule stated in *Denney* remains controlling.

In this circuit and elsewhere, this pleading standard governs whether the named class representatives have standing. *Denney*, 443 F.3d at ("For purposes of determining standing, we 'must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party' (i.e., the class members)." See also *Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409, 414 (S.D.N.Y. 2012). This remains true post-*Transunion*:

> [T]he pleading-stage burden applies until summary judgment. *Lujan* laid out only three general phases of litigation-pleading, summary judgment, and trial, and Rule 23 "does not-and cannot-add an additional step to the litigatory life cycle." Given that a plaintiff "remains several 'successive stages' away from resolving a given dispute" at the class certification stage, no shift in the burden should occur just yet. This position makes particular sense in a case such as this one where merits discovery will continue post-certification.

*In re Marriott Int., Inc. Customer Data Sec. Breach Litig.*, MDL No. 19-md-2879 (D. Md. May 3, 2022) (internal citations omitted). See also *Earl v. Boeing Co.*, 339 F.R.D. 391, 412, 2021 U.S. Dist. LEXIS 167384, *21, 2021 WL 4034514 (E.D. Tex. 2021) ("At class certification, a named plaintiff remains several 'successive stages' away from resolving a given dispute. Accordingly, there is no shift from the pleading-stage burden until summary judgment . . .").

Accordingly, the Motion for Class Certification cannot be denied on standing grounds.

**B.    THE PLAINTIFFS HAVE PROVEN ALL REQUIREMENTS OF RULE 23(A) BY A PREPONDERANCE OF THE EVIDENCE.**

**1.    Because the Plaintiffs presented evidence that the classes are defined by objective criteria which establish a membership with definite boundaries, the Plaintiffs have proven that each class is ascertainable.**

Defendants contend the Medical Monitoring Classes cannot be ascertained because they include "current and former" residents who have been exposed to Chemicals of Concern ("COC") through any exposure pathway for a period of one year or more. Defendants' Opposition at 43. They assert Dr.  Rosenfeld addressed only exposure by air emissions and

4

Medical Monitoring class members otherwise exposed cannot be counted. But Defendants ignore that *all* class members have been exposed by breathing the contaminated air, even if they also were otherwise exposed through contaminated water or soil. It is not possible to reside in the class area for one year or more during the applicable timeframe without breathing the air. The fact that additional exposure to harmful contaminants also likely occurred through water and soil does not mean the class cannot be ascertained.

Defendants also complain class members "could theoretically change day by day" because the class definition purportedly does not limit exposures to the 1957 to 1994 modeled period. As Dr. Rosenfeld explained in his report, residency *prior to 1995* is required to qualify for inclusion in the class:

> Figure 2 (below) demonstrates the years of residency prior to 1995 that are required for a resident to qualify for the proposed medical monitoring program, as presented by Plaintiffs' expert Dr. Tee Guidotti . . . . As shown in Figure 2, residents that lived closer to the Facilities require fewer years of residential exposure to qualify for the medical monitoring program. Residents that lived near the fence line of the Facilities can qualify with as little as one year of historical residential exposure.

**Pls. Ex. 1**; Rosenfeld Class Certification Report at 3.

Thus, the class definition necessarily has the limitation of residency "for a period of one year or more prior to 1995."

With respect to the Property Damage Classes and the Medical Monitoring — Alternate Subclass, Defendants argue a person who purchased property after the contamination allegedly caused the property's value to diminish suffered no damages and neither has an individual who buys and sells before the drop occurs. Defendants' Opposition at 44. They argue the class cannot be ascertained because these people lack the ability to prove class membership.

Defendants profoundly misunderstand the ascertainability requirements. The Court must consider only "whether a proposed class is defined using objective criteria that establish a

membership with definite boundaries.  This **modest threshold** requirement will only preclude certification if a proposed class definition is indeterminate in some fundamental way." *In re Petrobras Sec.*, 862 F.3d 250, 269 (2nd Cir. 2017) (emphasis added).

Plaintiffs set forth objective criteria as to timing, location, and subject matter which make the class ascertainable. Classes "identified by subject matter, timing, and location" are *per se* deemed to satisfy this requirement. *Langan v. Johnson & Johnson Consumer Cos.,* 897 F.3d 88, 95 (2nd Cir. 2018). Conversely, "ascertainability does not directly concern itself with the plaintiffs' ability to offer proof of membership under a given class definition, an issue that is already accounted for in Rule 23."  *In re Petrobras Sec.*, 862 F.3d at 269.

Although it is common for class definitions to snare a few members who may have not been damaged, this does not cause the class to fail the ascertainability requirement.  The U.S. Supreme Court recently affirmed a class certification award over defense objections as to ascertainability despite it being "undisputed that hundreds of class members suffered no injury in this case." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 463 (2016) (Roberts, C.J., concurring). Instead, the Court tasked the district court with identifying uninjured class members before distributing the award.

> Whether that or some other methodology will be successful in identifying uninjured class members is a question that, on this record, is premature. Petitioner may raise a challenge to the proposed method of allocation when the case returns to the District Court for disbursal of the award.

*Id.* at 463.

In other words, the presence of uninjured class members neither makes the class fail ascertainability requirements nor *per se* means that individual issues predominate. At trial, each class member will show they were injured by Defendants' conduct to recover damages.

When framed in the correct application of the law, Plaintiffs easily meet the requirements of ascertainability. The "modest threshold" is met on a class-wide basis by the opinions of Dr. Boyle. **Pls. Ex. 2**; Boyle Rebuttal Report. Dr. Boyle opines that putative members of the Property Damage Class "experience a common property-value diminution that could be as much as 27%." *Id.* at 1, para. 2. Further, Dr. Boyle sets forth precisely how individual damages will be calculated at the damages stages to account for the fact that "each class property will differ due to unique characteristics as reflected in their current market value." *Id.* at 9, para. 69-74.

> **2.     The Defendants have failed to show that there are no common issues under Rule 23(a)(2).**

Plaintiffs' experts offered class-wide proof of answers to numerous common questions of fact: whether the COC came from facilities operated by Defendants (they did); whether Defendants released the COC intentionally or negligently (they did); whether Defendants operated their facility in an ultra-hazardous manner (they did); whether the COC can cause the Diseases of Concern at the levels modeled by the other experts (they can); whether the contamination caused a decrease in property values across the class (it did); and whether Defendants' tortious conduct caused contamination of the real property of the Property Damage classes (it did). Plaintiffs also identified seven common issues of law in support of class certification as stated in the Plaintiff's Memorandum.

Although evidence of *one* common issue suffices to satisfy Rule 23(a)(2), Defendants claim Plaintiffs failed to prove even a *single* common issue. They incorrectly argue commonality requires plaintiffs to show they suffered the same injury. Defendants' Opposition at 35. The

flawed logic follows that since plaintiffs do not have identical injuries, "the amount of any such damages will all require individualized inquiries." *Id.* at 21.[2]

In addition, Defendants contest certification because "[t]he Property Damage Classes and the Alternate Medical Monitoring Subclass are . . . divided. They include (1) individuals whose sole putative injury is alleged diminution in property values, and (2) individuals alleging actual contamination of their land." *Id.* at 35. Similarly, Defendants complain that the Medical Monitoring Class includes individuals who allege present physical injuries and individuals who complain only of exposure to COCs. *Id.*

Defendants misunderstand and misstate the relevant case law regarding class-wide injury from *Walmart Stores v. Dukes*, 564 U.S. 338 (2011). As the Second Circuit has explained, the injuries need not be *identical*; it is enough that *the same conduct gives rise to the same kind of claims* so that resolution of the common issues will affect all, or a significant number of, class members:

> The claims for relief need not be identical for them to be common; rather, Rule 23(a)(2) simply requires that there be issues whose resolution will affect all or a significant number of the putative class members. "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."

*Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2nd Cir. 2015) (internal citations omitted).

---

[2] Beyond their insistence that not a single one of the issues involved in this litigation could possibly qualify for class treatment, Defendants at the class certification stage have challenged all but one of Plaintiffs' experts, as assertedly not satisfying the standards for admissibility of expert testimony under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). It is hardly apparent that Rule 702 and *Daubert* have *any* application at the class certification stage given that, of course, in this context there is no concern about shielding jurors from potentially unreliable expert testimony (the issue has not been addressed by either the Second Circuit or the Supreme Court). *See, e.g.*, *Watson v. Manhattan Luxury Autos., Inc.*, 2022 U.S. Dist. LEXIS 178069, *6 (S.D.N.Y. Sept. 29, 2022). Although Plaintiffs have responded in kind with motions to exclude some of Defendants' experts, in an effort to streamline the litigation Plaintiffs have elected not to file motions against other defense experts. However, that forbearance is limited to the class-certification stage: prior to trial Plaintiffs plan to vigorously contest the admissibility of the testimony of certain of these other experts, which is rife with methodological flaws (plainly at that stage Defendants will have the burden of demonstrating that all the expert testimony they wish the jury to hear satisfies the *Daubert* standard incorporated into Rule 702).

In other words, the true inquiry is not whether injuries are *identical* but whether class members have suffered the same *kind* of injuries rooted in a common cause:

> Although a named plaintiff is not required to show that the class members suffered identical injuries, the plaintiff must show that the class members suffered the same kind of injuries rooted in a common cause. Showing that all class members were subject to the same harm is sufficient to satisfy commonality's injury requirement. Whether class members in fact suffered an injury is a question for the merits.

*Cervantes v. CRST Int'l, Inc.*, 2022 U.S. Dist. LEXIS 105781, *10-11, 2022 WL 2130811 (N.D. Iowa 2022) (internal citations omitted).

All members of the Property Damage Classes have suffered the same *kind* of injury rooted in a common cause — a contamination of their real property and a reduction in value of their real property as a result of Defendants' tortious conduct. Plaintiffs have shown both actual contamination of real property (through Dr. Rosenfeld), the probability of further contamination (through Dr. Laton), and a diminution in property value (through Dr. Boyle). The class-wide injuries have the same cause — the tortious conduct of Defendants. The fact the injuries are not identical *in amount* does not defeat commonality. All members of the Medical Monitoring Class and the Medical Monitoring — Alternate Subclass have likewise suffered the same *kind* of injury: the need for medical monitoring caused by exposure to the toxic substances released from the Grumman Facility.

In any event, because Plaintiffs need prove only *one* common question to satisfy Rule 23(a)(2), the difference in the amount of damages sustained by class members is irrelevant to Rule 23(a)(2) commonality. Plaintiffs incorporate the listing of issues of law and fact common to each claim as specified in Plaintiffs' <u>Memorandum.</u>

### 3. The Defendants have failed to show that typicality is lacking.

"Typicality 'requires that the claims of the class representatives be typical of those of the class and is satisfied when each class member's claim arises from the same course of events, and

each class member makes similar legal arguments to prove the defendant's liability.'" *Central States Southeast v. Merck-Medco*, 504 F.3d 229, 245 (2nd Cir. 2007) (quoting *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2nd Cir. 2001)). It is undisputed that each class member's claim arises from the same course of events — the tortious conduct of Defendants.

The Defendants contend the Property Damage and Medical Monitoring — Alternate Subclass Class Representatives fail to satisfy typicality because they will make different legal arguments and are subject to unique defenses. Defendants' Opposition at 36.  Additionally, they contend the putative class members would make different arguments to prove their claims. Defendants further argue the Property Damage and Medical Monitoring — Alternate Subclass Class Representatives are subject to unique defenses regarding soil testing or lack thereof. *Id.* at 36.

This assertion ignores Dr. Rosenfeld's opinion that the entire class area was contaminated by CrVI emitted from the Bethpage Facility. **Pls. Ex. 3**, Rosenfeld Rebuttal Report at 15-16; Exhibits 8 and 9. Dr. Rosenfeld's data supports the COC contamination depositing on all properties in the Property Damage Class Area, not just the Medical Monitoring Class Area.  The Medical Monitoring Class Area boundaries do not show where the contamination stopped, only where the levels to support medical monitoring end.  The contamination continued beyond the medical monitoring boundary, as there was no wall to stop it and the wind continued to disperse the contaminants throughout the area.  The levels and frequency were all that changed. *Id.*

Likewise, Dr. Laton opines Defendants contaminated the groundwater underlying each class members' property as a result of the TCE-contaminated underground water plume **Pls. Ex. 4**, Laton Rebuttal Report at 11, para. 13. ("The primary COC at issue in this case is TCE . . .

TCE is a known vapor-forming chemical . . .TCE is known to exist (at measurable concentrations) under the Property Damage Class Area . . ."). This contamination leads to the likelihood of vapor intrusion into homes. *Id.* at 5, para. 7 ("Based upon the groundwater contamination levels, there exists a risk of vapor intrusion in the plume area. VOC vapors have the potential to enter private residences, businesses and other facilities and contaminate the indoor air. Based upon the potential for vapor intrusion, there are more than 13,000 residential properties that lie above the TCE groundwater plume and thus have the potential for exposure.") Accordingly, all putative class members will likely suffer some amount of soil vapor intrusion into their property.[3] This soil vapor intrusion "has a negative effect on residential property values" and "overall quality of life." *Id.* at 3, para. 4.[4]

Therefore, the named Class Representatives will make the same legal arguments for their damages claims — that Defendants committed the torts alleged in the complaint by contaminating their property, and that all class members are entitled to recover stigma damages and medical monitoring relief as a result. Plaintiffs presented class-wide proof to prove the elements of these torts, other than the amount of damages. Typicality accordingly is established.

---

[3] Indoor soil vapor intrusion has already been found by Navy testing in 2009. See Laton Rebuttal Report at 11, para. 19.

[4] This negative effect readily satisfies the substantive standard under New York law for a risk level sufficient to allow recovery for a loss of property value due to health hazards. *See, e.g.*, *Cottonaro v. Southtowns Indus., Inc.*, 625 N.Y.S.2d 773, 774 (App. Div. 1995) ("Damages from the diminished market value of real property as a result of public fear of exposure to a potential health hazard constitute consequential damages"). *See also D'Amico v. Waste Mgmt. of N.Y., LLC*, 2019 U.S. Dist. LEXIS 50323, at *12-*22 (W.D.N.Y. 2019); *Baker v. St.-Gobain Performance Plastics Corp.*, 232 F. Supp. 3d 233, 244-46 (N.D.N.Y. 2017).

4.    **Defendants have failed to show any reason why the representative parties would not fairly and adequately protect the interests of the class.**

In assailing Plaintiffs' Rule 23(a)(4) showing, Defendants erroneously argue the Property Damage Class Representatives seek to represent classes alleging present property damage, while lacking any contaminated property. Defendants' Opposition at 40. This alleged failure supposedly makes the class representatives adverse to class members who could show actual contamination. *Id.* at 40. As addressed *supra*, this assertion ignores the opinions of both Dr. Rosenfeld and Dr. Laton regarding actual contamination and the likelihood of future contamination of all properties within the class boundary. Considering these opinions, class representatives' interests are identical, and in no way adverse to the putative class. They likewise seek identical relief — damages to compensate for the reduction in value of their property caused by the contamination/stigma from the Grumman contamination as set forth by Dr. Boyle.

Defendants further claim the Medical Monitoring Class Representatives are not adequate representatives of the exposure-only class by relying on *Amchem Products Inc., v. Windsor*, 521 U.S. 591 (1997). Defendants claim the class representatives seek "generous immediate payments . . . [which] tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation protected fund for the future." Defendants' Opposition at 41. This is wholly incorrect and misleading.

*Amchem* arose from the certification of a single settlement class in which persons with asbestos-caused diseases were grouped together with "exposure-only" class members. Because the district court did not subclass diseased class members and exposure-only class members, the Supreme Court found impermissible conflicts of interest between the two groups:

> [N]amed parties with diverse medical conditions sought to act on behalf of a single giant class rather than on behalf of discrete subclasses. In significant respects, the interests of those within the single class are not aligned. Most saliently, for the

currently injured, the critical goal is generous immediate payments. That goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future.

*Id*. at 598.

In the instant case, by contrast, the Medical Monitoring Class Representatives *in their representative capacity* do not seek any immediate payments in compensation for their injuries. To the contrary, the Medical Monitoring Class Representatives seek an award to establish pooled resources for the early detection and treatment of the diseases of concern. Some who have suffered personal injuries already developed from exposure to the COCs have separately filed lawsuits which do not interact with class certification or class compensation. Thus, unlike *Amchem*, the exposure class is separated, or subclassed, from the individual damage claims of the Class Representatives, so that no Rule 23(a)(4) concerns are presented.

Defendants also claim that because the named representatives seek individual damages in their personal injury claims, they have somehow split the absent putative class member claims. Under this flawed logic, it could potentially preclude putative class members from later recovering compensatory damages. Defendants' Opposition at 42.  According to Defendants, New York's transactional approach to *res judicata* means a final judgment on the merits awarding damages to the Class Representatives would operate as a bar to the class members recovering compensatory damages for later developed contaminant-caused disease. Defendants argue this supposed error weighs against Plaintiffs' counsel adequately representing the class.

Defendants' assertion is wrong on the law and wrong on the facts. Fed. R. Civ. Pro. 23(g)(4) lists a number of factors the Court should consider in deciding to appoint class counsel, including the work counsel have done in identifying claims and the resources counsel will commit to the action. Defendants fail to mention the years of work and the vast resources the undersigned counsel have provided to move this litigation forward. Instead, Defendants' entire

Rule 23(g)(4) argument is based on a single supposed error as to the doctrine of *res judicata*. But it is Defendants' attorneys — not undersigned counsel — who misunderstand *res judicata*.

With respect to claim preclusion, the doctrine of *res judicata* provides that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or **could have been raised** in that action." *Simmons v. Trans Express Inc*., 16 F.4th 357, 360 (2d Cir. 2021) (emphasis added) (citations omitted). The "could have been raised" limitation on claim preclusion is not changed by New York's "transactional approach" to claim preclusion. Indeed, the Second Circuit applied the New York transactional approach to claim preclusion in the cited case. There, the Second Circuit ruled Ms. Simmons was barred from bringing a federal lawsuit to recover for the non-payment of wages because she had lost an earlier wrongful termination claim against her employer in New York small claims court. Even though wrongful discharge and wage violations are separate claims, the Second Circuit pointed out that "[c]ertainly, Simmons **could have asserted** both wrongful discharge and unpaid overtime claims in the small claims court action." 16 F.4th at 361 (emphasis added).

The Medical Monitoring and Medical Monitoring — Alternate Subclass putative class members do not *at this time* have a claim on any theory to recover personal injury compensatory damages because they have not yet been diagnosed with any contaminant-caused disease.[5] If the putative class members later develop such a disease from exposure to Grumman's contamination, their claim for damages will then accrue and they will have the right to file an individual personal injury lawsuit. But, because they cannot *now* file a personal injury damages claim which does not yet exist, there can be no later claim preclusion.

---

[5] A number of putative class members have filed individual lawsuits for personal injury claims already diagnosed and caused by exposure to Grumman's contamination.

This conclusion is not changed because class counsel filed individual actions for other clients previously injured by exposure to the COCs. Defendants' Opposition at 43. These individuals *have* present-day injuries and have chosen to pursue personal injury compensation, while also obtaining the benefit of medical monitoring in the class context to monitor for other, future diseases that have yet to manifest.

Finally, as is common in almost all class actions, the Class Representatives also seek to recover on individual claims. This does not mean proposed class counsel cannot adequately represent the class. *Id.* To the contrary, the undersigned counsel will pursue the maximum recovery for all class members who have claims whether they are named representatives or not. Plaintiffs accordingly reiterate their argument that they have proven all requirements of Rule 23(a) by a preponderance of the evidence.

C.   **THE PLAINTIFFS HAVE PROVEN ALL REQUIREMENTS OF RULE 23(B)(2), (B)(3), AND (C)(4) BY A PREPONDERANCE OF THE EVIDENCE.**

   1.   **The Defendants failed to raise a credible objection to the Rule 23(b)(2) certification of either Medical Monitoring Class.**

Defendants initially oppose Rule 23(b)(2) certification of the Medical Monitoring Classes on the ground that the injunction Plaintiffs seek "to *fund* the Medical Monitoring program" is not an injunction at all, but rather a claim for damages. *Id.* at 46. The Western District, however, has already held precisely the opposite:

> A court-administered fund which goes beyond payment of the costs of monitoring an individual plaintiff's health to establish pooled resources for the early detection and advances in treatment of the disease is injunctive in nature rather than 'predominantly money damages' and therefore is properly certified under Rule 23(b)(2).

*Gibbs v. EI DuPont De Nemours & Co., Inc.*, 876 F. Supp. 475, 481 (W.D.N.Y. 1995).

Similarly, in *Prantil v. Arkema France S.A.*, 2022 U.S. Dist. LEXIS 89217, 2022 WL 1570022 (S.D. Texas May 18, 2022), the court, in certifying a medical monitoring class in an environmental case, relied in part on *Gibbs* to reject defendants' argument that plaintiffs' medical surveillance injunction was actually a request for monetary relief couched in injunctive language:

> But Plaintiffs do not request that Arkema simply write a check to fund future treatments. Instead, Plaintiffs propose a long-term epidemiological survey to inform class members about health issues in the class area, pulmonary and serum testing to help members understand their exposure risks, and educational programs to tell members about risks in the class area. This programming is a far cry from a fund that merely disburses funds for future medical testing.

*Id*. at *148-*149.

Second, Defendants claim Rule 23(b)(2) certification is improper because "the money relief they seek is individualized." Defendants' Opposition at 46. Plaintiffs do not seek medical monitoring for any specific individual but for a program to establish pooled resources for the early detection and advances in treatment of the Diseases of Concern in the exposed community.

Third, Defendants insist Rule 23(b)(2) certification is not available because the Medical Monitoring Classes purportedly are insufficiently cohesive. In this regard, they argue whether an individual should be monitored depends heavily on individual factors. *Id.* Defendants' "dogged focus on the factual differences among the class members appears to demonstrate a fundamental misunderstanding of … Rule 23(b)(2)." *Prantil* , 2022 U.S. Dist. LEXIS 89217, *124-*125 (quoting *Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998)):

> Certification under Rule 23(b)(2) "centers on the defendants' alleged unlawful conduct, not on individual injury." *In re Rodriguez*, 695 F.3d 360, 365 (5th Cir. 2012) (citing *In re Monumental Life Ins. Co.*, 365 F.3d 408, 415 (5th Cir. 2004)); see *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988) (emphasizing that although "the claims of individual class members may differ factually," Rule 23(b)(2) is a proper vehicle for challenging "a common policy"). Thus, Rule 23(b)(2) does not demand that the defendant's conduct "uniformly affect[]-and injur[e]-each [class member]." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 847

16

(5th Cir. 2012). To that end, the Fifth Circuit has cited with approval the Advisory Committee's position that "[a]ction or inaction is directed to a class within the meaning of [Rule 23(b)(2)] even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." *Id.* at 848 (quoting Fed.R.Civ.P. 23(b)(2) 1966 Amendment Advisory Committee Note); see 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1775 (2d ed. 1986) ("All the class members need not be aggrieved by or desire to challenge the defendant's conduct in order for some of them to seek relief under Rule 23(b)(2).").

*Id.*

In the instant case, Plaintiffs provided class-wide proof that Defendants' tortious conduct uniformly exposed and injured all members of the class by placing them at risk for severe disease. The single injunction requested — the funding of the medical monitoring program to establish pooled resources for the early detection and advances in treatment of the Diseases of Concern is the proper vehicle for challenging Defendants' uniform tortious conduct. Defendants accordingly fail to raise a credible objection to the Rule 23(b)(2) certification of either Medical Monitoring Class.

### 2.   The Defendants failed to show that certification under Rule 23(b)(3) is improper.

Defendants contend the proposed classes fail Rule 23(b)(3)'s predominance requirement "because the individual issues presented . . . are far more substantial than any common ones." Defendants' Opposition at 37. This follows from Defendants' frivolous claim that there are zero "common issues" in this action. When the common issues that Plaintiffs show with class-wide proof are added to the equation, however, the balance shifts strongly in favor of Rule 23(b) predominance.

Plaintiffs have presented class-wide expert proof that the COCs came from facilities operated by Defendants; that Defendants released the COCs intentionally or negligently; that Defendants operated their facility in an ultra-hazardous manner; that the COCs can cause the

Diseases of Concern at the levels modeled by the other experts; that all members of the Medical Monitoring Class have a need for medical monitoring because of Defendants' tortious conduct; and that Defendants' tortious conduct caused contamination and diminution in value of the real property of the Property Damage classes. Plaintiffs also will prove by class-wide proof the many common issues of law listed in their Plaintiffs' Memorandum.

Although the *amount* of damages will require individual determinations, the law is clear "that individualized damages determinations alone cannot preclude certification under Rule 23(b)(3) . . . ." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 409 (2d Cir. 2015). Similarly, if statute-of-limitations issues exists, the law is likewise clear that "[c]hallenges based on the statute of limitations . . . have usually been rejected and will not bar predominance satisfaction because those issues go to the right of the class member to recover, in contrast to underlying common issues of the defendant's liability." *Cox v. Spirit Airlines, Inc.*, 341 F.R.D. 349, 371, 2022 U.S. Dist. LEXIS 57199, *44-*45, 2022 WL 939732 (E.D. N.Y. 2022); see also *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 78 (E.D.N.Y. 2004) ("Courts have been nearly unanimous in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintiff, does not preclude certification of a class action so long as the necessary commonality and . . . predominance are otherwise present").

Defendants fare no better by arguing that the filing of 13,233 individual property damage actions, or the filing of thousands of individual medical monitoring actions, would somehow be superior to a class action. This argument is meritless on its face. The fact that the undersigned counsel have filed other actions covering individual plaintiffs does not change this conclusion. These plaintiffs have manifested personal injuries alleged to be directly related to exposure to the COCs and have elected to pursue individual actions in addition to protections afforded by the

class. Thousands of other class members will benefit from the Court's certification of the classes. Plaintiffs accordingly respectfully reiterate their request for the Court to certify the classes under Rule 23(b)(3).

> **3.     The Defendants have failed to show certification under Rule 23(c)(4) is improper.**

Defendants contend Plaintiffs waived certification under Rule 23(c)(4) because they purportedly failed to address the propriety of certifying, in the alternative, a Liability-Only Property Damage Class. <u>Defendants' Opposition</u> at 45. This argument blatantly mischaracterizes Plaintiffs' <u>Memorandum</u>. In such, Plaintiffs explained why the Property Damage Class easily passed Rule 23(b)(3)'s predominance requirement and that this conclusion was "even more compelling" with respect to the liability-only classes because damages could not be considered in determining predominance. *Id.* at 39. In other words, the same arguments as to predominance and superiority apply, but damages are excluded from the equation.

Defendants attempt to salvage their Rule 23(b)(4) objection by imagining a host of purported individual issues pertaining to liability. Almost every cited issue, however, is either irrelevant to class certification whether putative class members have standing — or can be proven by class-wide proof. Timeliness may require individual determinations, but this does not bar certification given that commonality and predominance are otherwise present.

## III. <u>CONCLUSION</u>

The Honorable Pamela K. Chen recently pointed out that the

"Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." . . . "Accordingly, 'if there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require.'" *In re Kind LLC "Healthy & All Natural" Litig.*, 337 F.R.D. 581, 593 (S.D.N.Y. 2021) (quoting *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir. 1968).

*Francisco v. NY Tex. Care, Inc.*, 2022 U.S. Dist. LEXIS 55633, *9-*10 (E.D.N.Y. Mar. 28, 2022).

While individual issues always arise in any class action, Plaintiffs respectfully submit Defendants have failed to show the Second Circuit's preference for class certification should not carry the day. Plaintiffs accordingly reiterate their request that the <u>Motion for Class Certification</u> be granted in its entirety.

Dated: December 15, 2022

Respectfully submitted,

*Counsel for Plaintiffs and the Proposed Classes*

NAPOLI SHKOLNIK

*/s/ Paul Napoli*
Paul Napoli (PNapoli@nsprlaw.com)
Robert Gitelman (RGitelman@napolilaw.com)
400 Broadhollow Rd
Melville, NY 11747
Telephone: (212) 397-1000

ENVIRONMENTAL LITIGATION GROUP, P.C.
Gregory A. Cade (GregC@elglaw.com)
Kevin B. McKie (KMckie@elglaw.com)
Gary A. Anderson (Gary@elglaw.com)
2160 Highland Avenue South
Birmingham, Alabama 35205
Telephone: (205) 328-9200